J-S80040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEITH WILLIAMS, :
:
Appellant : No. 259 EDA 2017

Appeal from the Judgment of Sentence December 1, 2016
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0009635-2014

BEFORE:  BOWES, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED FEBRUARY 27, 2018**

Keith Williams ("Williams") appeals from the judgment of sentence imposed following his conviction of aggravated assault, persons not to possess firearms, firearms not to be carried without a license, and possession of an instrument of crime.[1]  We affirm.

The trial court summarized the relevant factual and procedural history underlying this appeal in its Opinion, which we incorporate herein by reference.  *See* Trial Court Opinion, 6/29/17, at 1-5.

In this timely appeal, Williams presents the following questions for our review:

> 1. Whether, as a question of law, the trial court erred in permitting Philadelphia Police Officer Colan Goshert [("Officer Goshert")] to identify[,] as [a] Mercedes Benz[,] the black or

---

[1] *See* 18 Pa.C.S.A. §§ 2702(a)(1), 6105(a)(1), 6106(a)(1), 907(a).

dark-colored vehicle in the video in Commonwealth exhibit "C-3", because Officer Goshert lacked personal knowledge of the contents of the video[?]

2. Whether the trial court erred in permitting Detective Jeff Knoll [("Detective Knoll")] to testify as to what Evelyn McCullers [("McCullers")] said to another Philadelphia Police [d]etective[,] because it was double-hearsay offered for the truth of the matter[?]

Brief for Appellant at 5-6 (citations to transcript omitted).

Williams's issues challenge the trial court's rulings on the admissibility of evidence, which we review under the following standard:

[I]n reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

**Commonwealth v. Schley**, 136 A.3d 511, 515 (Pa. Super. 2016) (citation and ellipses omitted). Moreover, "a trial court, acting as the finder of fact, is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence." **Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa. Super. 2014).

In his first issue, Williams argues that the trial court erred as a matter of law when it admitted at trial, over Williams's objection, the "lay opinion" of Officer Goshert that the vehicle shown in the surveillance video (hereinafter "the video"), taken from a pizza shop located in close proximity to the scene of the shooting, was a Mercedes Benz. **See** Brief for Appellant

at 9-10. Williams points to Pennsylvania Rule of Evidence 602, which provides as follows:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

Pa.R.E. 602; *see also* Brief for Appellant at 10. According to Williams, "it is undisputed that Officer Goshert did not have first-hand knowledge of the events depicted in the [video,] and the [O]fficer did not have personal knowledge of [Williams's] car." Brief for Appellant at 10.

The trial court concisely addressed this claim in its Opinion and determined that it properly admitted Officer Goshert's testimony in question. *See* Trial Court Opinion, 6/29/17, at 8-9. We agree with the trial court's analysis and determination, and we therefore affirm on this basis as to Williams's first issue. *See id.*

In his second issue, Williams contends that the trial court erred in admitting, over objection, prejudicial "double hearsay."[2] *See* Brief for Appellant at 10-13. Specifically, Williams challenges Detective Knoll's testimony that McCullers had told another detective (who later informed

---

[2] *See* Pa.R.E. 801(c) (stating that "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); *see also* Pa.R.E. 802 (providing that hearsay is *per se* inadmissible except as provided in the Pennsylvania Rules of Evidence or by statute).

Detective Knoll of same) that McCullers would not give a formal police statement about the shooting until Williams was in police custody. ***See id.*** According to Williams, this statement was offered for the truth of the matter asserted and did not satisfy any exception to the rule against hearsay. ***Id.*** at 12. Williams additionally argues that

> this testimony by Detective Knoll went beyond merely explaining police conduct; "[] McCullers was reluctant to speak" would be a permissible statement to explain subsequent police conduct and why [McCullers's formal police] statement was provided 35 days after the shooting. But, the explanation that [] McCullers was reluctant to speak because [Williams] was not in custody invited prejudicial inferences to be made about [Williams] and his character.

***Id.***

In its Opinion, the trial court addressed Williams's claim, adeptly summarized the relevant law, and opined that the court did not err in admitting the testimony in question. ***See*** Trial Court Opinion, 6/29/17, at 11-13. Because we agree with the trial court's rationale and determination, we affirm on this basis in rejecting Williams's second issue. ***See id***.[3]

_____

[3] Moreover, even if it was error for the trial court to admit the testimony in question, such error was harmless, where the trial court sat as the fact-finder at Williams's trial. ***See Smith***, ***supra*** (stating that even if evidence was inadmissible at a non-jury trial, a trial court, acting as the finder of fact, is presumed to ignore it); ***see also Commonwealth v. Council***, 421 A.2d 623, 625 (Pa. 1980) (stating that "judicial fact finders are capable of disregarding most prejudicial evidence.").

Accordingly, as we discern no abuse of the trial court's discretion, or error of law, in admitting the evidence presented at trial, Williams's issues do not entitle him to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/18

0037_Opinion

IN THE COURT OF COMMON PLEAS
FOR THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

**FILED**

**JUN 2 9 2017**

**Office of Judicial Records**
**Appeals/Post Trial**

COMMONWEALTH        :      CP-51-CR-0009635-2014

v.                  :      CP-51-CR-0009635-2014 Comm. v. Williams, Keith
Opinion

KEITH WILLIAMS        :

7968881061

**MEMORANDUM OPINION**

*CAMPBELL, J.*                                         June    30, 2017

**Procedural History**

On June 30, 2016, Appellant Keith Williams waived his right to a trial by jury and proceeded to trial before this Court, sitting without a jury. Trial was bifurcated for additional testimony and completed on July 1, 2016, when Appellant was adjudged guilty of aggravated assault (F-1), possession of a firearm by a prohibited person, carrying a firearm without a license, and possession of an instrument of a crime. Sentencing was deferred for preparation of a mental health evaluation and a pre-sentence investigation.

On December 1, 2016, Appellant was sentenced to 10-20 years incarceration on the aggravated assault conviction, a consecutive term of 5-10 years incarceration on possession of a firearm by a prohibited person, and 5-10 years incarceration on possession of an instrument of a crime, to be served consecutive to the aggravated assault sentence and concurrent with the firearm by prohibited person sentence. The result was an aggregate sentence of incarceration of 15-30 years. The conviction of carrying a firearm without a license merged for purposes of sentencing.

A Motion for Reconsideration of Sentence was filed on December 5, 2016. That motion

1

was denied on December 7, 2016.

A timely Notice of Appeal was filed on January 5, 2017.

Pursuant to Pa.R.A.P. 1925(b)(2) and (3), the Court entered an order on March 2, 2017, directing the filing of a Statement of Errors Complained of on Appeal, not later than twenty-one (21) days after entry of the order, with leave to file a supplemental statement of errors within twenty-one days after receipt of all ordered notes of testimony. The order was reissued on March 9, 2017, to make service on appointed appellate counsel.

On March 30, 2017, a Rule 1925(b) Statement was filed.

On June 22, 2017, a timely Supplemental Rule 1925(b) Statement was filed following preparation of the notes of testimony.

**Factual History**

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, established the following:

On the afternoon of June 23, 2014, Dwayne Pierce, known to his neighbors by his nickname, Stroll, was on his porch on 11 East Clapier Street, chatting with his neighbors in the adjoining house, 13 East Clapier. N.T. 6/30/16, pp. 45-46, 95-96, N.T. 7/1/16, pp. 6, 8. Directly across Clapier Street, Evelyn McCullers sat on her porch chatting with her son, Darryl McCullers, who had stopped by to visit her. N.T. 6/30/16, pp. 32, 34, 58-59. The street had been blocked off, a fire hydrant had been turned on, and children were playing in the street. N.T. 6/30/16, pp. 32-33, 74-75.

Mr. Pierce was on his porch when he saw Appellant, who he knew. N.T. 7/1/16, pp. 8, 10.

2

Mr., Pierce had loaned Appellant money a few weeks earlier, and wanted to talk to him about repayment. N.T. 7/1/16, pp. 8-10, 37. Mr. Pierce came down from his porch to the street and was heading toward Appellant. As Pierce approached, Appellant seemed enraged and started cursing. N.T. 7/1/16, pp. 11-12, 41. At that point, Pierce turned to head back to the porch. N.T. 7/1/16, pp. 12, 14-15. A short time later, Pierce saw Appellant walking up Clapier, whereupon he again came down off the porch and headed toward Appellant. N.T. 6/30/16, pp. 38, 45, 47-49, 67; N.T. 7/1/16, pp. 8, 10, 12, 16. Appellant then pulled a firearm from his waistband N.T. 7/1/16, pp. 18-19. Appellant pointed the gun at Pierce's chest and pulled the trigger, resulting in a misfire. Appellant then manipulated the gun pointed it down and shot Pierce in the left knee, then a moment later in the right leg. N.T. 7/1/16, pp. 20-21, 4748; C-28.

Ms. McCullers heard shots, which caused her to look down Clavier to the end of the street, where she saw Appellant, known to her as Keith, firing shots. N.T. 6/30/16, pp. 34-37. She could not make out a gun in Appellant's hand, but she saw him with his arm out-stretched, making a movement as though pulling a trigger, "shooting up the street." N.T. 6/30/16, pp. 36.

Mr. McCullers was standing on his mother's porch with his back to the street when he heard shots, which caused him to turn toward the street. N.T. 6/30/16, pp. 58-59. The shots were coming from the direction of the intersection of Germantown Avenue and Clavier. N.T. 6/30/16, pp. 60. Turning in that direction to holler for one of the children to take cover, he saw Appellant, who he had grown up with and has known for 40 years or more, pointing an automatic-type gun at Mr. Pierce, who had already been shot. N.T. 6/30/16, pp. 60-61, 63-64, 82-83, 94. Mr. McCullers could make out the gun in Appellant's hand. N.T. 6/30/16, pp. 63.

After the gunshots, Mr. McCullers came down from his mother's porch and pulled Mr.

3

Pierce away from Appellant so he wouldn't get shot again. N.T. 6/30/16, pp. 64-65, 67, 73. Mr. Pierce said: "He shot me, man. He shot me. I can't believe he f'ing shot me." N.T. 6/30/16, pp. 61, 74. Mr. McCullers attempted to calm Mr. Pierce, who appeared shocked, and couldn't believe he'd been shot. N.T. 6/30/16, pp. 73; N.T. 7/1/16, pp. 23. After the shooting, Appellant put the gun in his waist band and went down Clavier to Germanton and around the corner. N.T. 6/30/16, pp. 67-68, 70, 92.

Ms. McCullers called 9-1-1 and an ambulance and police responded to the scene. N.T. 6/30/16, pp. 49-50; C-5. Ms. McCullers and her son Darryl spoke briefly with police on the scene, but did not give statements to Detectives until 35 days later. N.T. 6/30/16, pp. 50-54, 71-72, 87, 89, 97; D-1, D-7.

Mr. Pierce was taken to Einstein hospital, where he was interviewed by police and shown a photo array. N.T. 6/30/16, pp. 131-134, 136; C-9. Mr. Pierce identified Appellant from the photo array. N.T. 6/30/16, pp. 135-136.

Following the shooting, police went to the nearby store, at 3934 Germantown Avenue, over which Appellant lives, but he was not present. Security video was obtained from a nearby pizza shop. N.T. 6/30/16, pp. 119, 137, 152; C-13, C-14m. The video showed a black Mercedes in front of that location at about the time of the shooting, but the car was not there when police arrived. N.T. 6/30/16, pp. 23, 24, 26; C-14. Appellant drives a black Mercedes, which Mr. Pierce saw him driving from the scene. N.T. 7/1/16, pp. 44-45; C-9.

Detective Albert Ford of the U.S. Marshall's Fugitive Task Force attempted to serve an arrest warrant for Appellant on several occasions following its assignment to him on July 8, 2014. N.T. 6/30/16, pp. 102-104. Based on information received, he finally located and arrested

4

Appellant in a motel in Glassboro, New Jersey, on July 14, 2014. N.T. 6/30/16, pp. 103-105. The detective's efforts were documented in his notes. N.T. 6/30/16, pp. 105-105; C-26.

Detective Timothy Hart was assigned to process the crime scene, which he sketched and photographed, and from which he recovered five (5) fired cartridge casings ("FCC"). N.T. 6/30/16, pp. 114, 117-118, 127-128; C-2a-m, C-12. Those five FCC's were fired from the same gun. N.T. 7/1/16, pp. 46. He also identified and photographed a blood trail on Clapier Street. N.T. 6/30/16, pp.117; C-11. Lt. Otto conducted a neighborhood canvass for witnesses. N.T. 6/30/16, pp. 122; C-15.

Mr. Pierce received treatment for his wounds and was in the hospital for four or five days. He then went to inpatient therapy for two-three months. He continued out-patient treatment after discharge from the inpatient treatment. He was in a wheelchair for one and one-half to two months. His right leg fully recovered, but he continues to suffer chronic pain in his left knee. N.T. 7/1/16, pp. 23-26.

There was a stipulation that Appellant did not have a valid license to carry a firearm and was a person prohibited from possessing a firearm, as defined by 18 Pa. C.S. § 6105. N.T. 7/1/14, pp. 47, 57-58.

## Discussion

Appellant raises the following issues for appeal: 1) The evidence was insufficient support the convictions; 2) It was error to permit witnesses to testify to hearsay, to render opinions where not qualified as an expert or to testify about matters as to which the witness did not have personal knowledge; and 3) It was error to admit an exhibit which constituted hearsay.

### 1. The evidence was sufficient to support the convictions.

5

A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court has instructed:

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013).

Appellant alleges in his initial Rule 1925(b) Statement of March 20, 2017, that the evidence was insufficient to support the convictions "because the elements of intent and identification for each charge were not satisfied."

This assertion is without merit. There was overwhelming evidence that Appellant, who was well known to Mr. Pierce and the McCullers, shot Pierce in each leg. Likewise, the three witnesses testified credibly that Appellant shot Pierce twice with no provocation and without justification.

This shooting certainly constituted an aggravated assault, which is defined as follows:

6

§ 2702. Aggravated assault.

(a) Offense defined. --A person is guilty of aggravated assault if he:

> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

18 Pa. C.S. § 2702(a)).

Appellant caused the injury intentionally, and the gunshot wounds were certainly serious. The evidence to this effect satisfied the requirements of the crime of aggravated assault as a felony of the first degree.

The Crimes Code defines, possessing instruments of crime, 18 Pa.C.S. § 907, as follows:

(a) Criminal instruments generally.--A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.
(b) Possession of weapon.--A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

...

(d) Definitions.--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

...

"Instrument of crime." Any of the following:

...

> (2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.
"Weapon." Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon.

The gun Appellant used was clearly an instrument of a crime.

Additionally, Appellant did not have a license to carry that gun, and he was a person

7

prohibited from possessing the gun. Accordingly, the evidence was sufficient to show that the gun he used to shoot Mr. Pierce was possessed in violation of 18 Pa. C.S. § 6105 and § 6106.

## 2. The Court's evidentiary rulings were not erroneous.

It is axiomatic that the admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. *Commonwealth v. Seilhamer*, 862 A.2d 1263, 1270 (Pa. Super. 2004). Moreover, a party must make a timely and specific objection in order to preserve an issue for appeal. *Commonwealth v. Brown*, 701 A.2d 252, 254 (Pa. Super. 1997). "The Superior Court will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected." *Commonwealth v. Montalvo*, 641 A.2d 1176, 1184 (Pa. Super. 1994).

Trial judges, as finders-of-fact, are presumed not to consider inadmissible or prejudicial matters. *Commonwealth. v. Davis*, 421 A.2d 179, 183 (Pa. 1980); *Commonwealth v. Glover*, 405 A.2d 945, 947 (Pa. Super. 1979); *Commonwealth. v. Green*, 347 A.2d 682, 683 (Pa. 1975).

### a. *Testimony of Police Officer Goshert*.

Appellant claims that it was error to permit Officer Goshert to testify that the vehicle seen in the video was a Mercedes because "he lacked personal knowledge" and the "identification required expert testimony." Supplemental Rule 1925(b) Statement (6/22/17), §§ 1 and 2.

Officer Goshert, who responded to the scene, ascertained that the Germantown Pizza shop had a video surveillance camera, and screened that video at Germantown Pizza. N.T. 6/30/16, pp. 19-21. Officer Goshert testified, over objection, that a specific car in the video was an "older model Mercedes Sedan." N.T. 6/30/16, pp. 23-24.

First, the video spoke for itself and the car was apparent as a Mercedes sedan. Second, a

8

witness does not have to be an expert to identify a car make as a Mercedes. The testimony of a police officer, or anyone, identifying a car make is well within the scope of opinion testimony by lay witnesses contemplated by Pennsylvania Rule of Evidence 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Finally, assuming *arguendo* that it was error to let the officer identify the car in the surveillance video as a Mercedes, that error was harmless beyond all doubt, as the victim, Mr. Pierce, identified Appellant as driving off in his Mercedes following the shooting. N.T. 7/1/16, pp. 44-45; C-9. The officer's identification of the car make, even if error, did not contribute to the verdict. "[T]he uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant." *Commonwealth v. Mitchell*, 839 A.2d 202, 214-215 (Pa, 2003).

b. *Testimony of Darry McCullers*

Appellant complains it was error to admit Darryl McCullers's testimony that the victim, Peirce, said: "He shot me, man. He shot me. I can't believe he f'ing shot me." N.T. 6/30/16, pp. 61, 74. Supplemental Rule 1925(b) Statement (6/22/17), § 3.

The statement was admissible both as an excited utterance and a present sense impression under Pa.R.E. 803(1) and (2).

The present sense impression exception to the rule against hearsay, under Pa.R.E., Rule 803(1), allows the admission of "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter ...." regardless

9

of the availability of the declarant to testify at trial. The observation must be made at the time of the event or shortly thereafter, making it unlikely that the declarant had the opportunity to form an intent to misstate his observation. Consequently, the trustworthiness of the statement depends upon the timing of the declaration. *Commonwealth v. Gray*, 867 A.2d 560 (Pa. Super. 2005). The present sense impression exception to the hearsay rule permits testimony of declarations concerning conditions or even non-exciting events observed by the declarant. *Commonwealth v. Harper*, 614 A.2d 1180, 1183 (1992). The observation must be made at the time of the event or so shortly thereafter that it is unlikely that the declarant had the opportunity to form the purpose of misstating his observation. *Commonwealth v. Blackwell*, 343 Pa. Super. 201, 494 A.2d 426, 431 (1985).

An excited utterance, as an exception to the hearsay rule, is "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Pa.R.E., Rule 803(2). The Comment to this exception states that "this exception has a more narrow base than the exception for a present sense impression, because it requires an event or condition that is *startling*." *Id.*, Comment-1998 (emphasis in original). Further, "an excited utterance (1) need not describe the startling event; it need only *relate* to it, and (2) need not be made contemporaneously with, or immediately after, the startling event. *Id.* (emphasis in original); see also *Commonwealth v. Carmody*, 799 A.2d 143 (Pa. Super. 2002).

Even without McCullers's testimony that Pierce appeared shocked, and Pierce's testimony that he couldn't believe he'd been shot (N.T. 6/30/16, pp. 73; N.T. 7/1/16, pp. 23), a double gunshot victim's exclamation about just having been shot is certainly admissible as both a present sense

10

impression and an excited utterance under Pa.R.E. 803(1) and (2). See *Commonwealth v. Manley*, 985 A.2d 256. (Pa. Super. 2009), appeal denied by 996 A.2d 491 (2010) (trial court did not abuse its discretion by admitting the victim's statement to a police officer under the excited utterance hearsay exception, where officer testified that he interviewed the victim shortly after the shooting and that the victim was in a panicked and emotional state with multiple gunshot wounds when he provided the description of his assailants); *Commonwealth v. Jones*, 912 A.2d 268 (2006) (Trial court did not err in admitting a shooting victim's statement as excited utterances under Pa. R. Evid. 803(2) where less than 10 minutes after being shot, the victim identified defendant as one of the shooters while the victim was bleeding from his gunshot wound and awaiting transport to the hospital).

Moreover, even if these hearsay exceptions did not apply, there was overwhelming, uncontradicted evidence that Appellant shot Pierce, so as to render any error in this regard clearly harmless.

     c.    *Testimony of Detective Knoll*

Appellant asserts that it was error to permit the assigned Detective, Jeff Knoll, to testify to information received from his partner regarding the delay in Ms. McCullers providing a written statement. Supplemental Rule 1925(b) Statement (6/22/17), § 4.[1]

In the course of describing the process and progress of his investigation, Detective Knoll explained that the reason for the one month gap between the time he was aware of Ms. McCullers

---

[1] Appellant erroneously identifies the Detective as Ford. Ford was the warrant squad officer who arrested Appellant in New Jersey. It is clear from Appellant's description of the incident and citation to the record, that his complaint involves the testimony of Detective Knoll.

11

as a witness and the actual taking of a formal statement was due to her claimed reluctance to cooperate until Appellant, a fugitive at that point, was taken into custody. Knoll received this information from his partner in the investigation, Detective Knecht. N.T. 6/30/16, pp. 139-142.

First, the testimony was not hearsay. It was not offered for the truth of whether Ms. McCullers was in fact afraid to give a statement while Appellant was a fugitive, but rather simply that she claimed that, which explained why the Detectives did not take her statement and that of her son until a month after the shooting.

Second, an out-of-court statement offered to explain a witness's course of conduct is not hearsay and is admissible without first satisfying any of the hearsay exceptions. *Commonwealth v. Rega*, 933 A.2d 997, 1017 (Pa. 2007); *Commonwealth v. McLean*, 387 354, 365, 564 A.2d 216, 221 (Pa. Super. 1989); *Commonwealth v. Sneed*, 526 A.2d 749, 754 (Pa. 1987); *Commonwealth v. Carelli*, 546 A.2d 1185, 1198 (Pa. Super. 1988). As the Supreme Court has explained:

> [I]t is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted. *Commonwealth v. Jones*, 540 Pa. 442, 658 A.2d 746, 751 (Pa. 1995); *Commonwealth v. Yates*, 531 Pa. 373, 613 A.2d 542, 543 (Pa. 1992); *Commonwealth v. Palsa*, 521 Pa. 113, 555 A.2d 808, 810 (Pa. 1989); *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032, 1035 (Pa. 1980). The trial court, in exercising discretion over the admission of such statements, must balance the prosecution's need for the statements against any prejudice arising therefrom. See *Jones*, 658 A.2d at 751; *Yates*, 613 A.2d at 543-44; *Palsa*, 555 A.2d at 811.

*Commonwealth v. Chmiel*, 889 A.2d 501, 532-533 (Pa. 2005).

Here, as in *Jones* and *Chmeil*, appellant attacked the investigation by questioning the timing of the statements as reflecting both on the credibility of the McCullers and the competency of the investigation. This "opened the door for the prosecution to provide extensive testimony explaining the course of the investigation." *Chmiel*, 889 A.2d at 533. See also *Jones*, 658 A.2d at 751.

12

Because the testimony was not offered for the truth of Ms. McCullers's motivation, but to explain the timing and course of the investigation, it was admissible and the Court properly exercised its discretion in overruling Appellant's objection.

### 3.     It was not error to admit exhibit C-26.

Appellant objects to the admission of exhibit C-26, the case notes of Detective Albert Ford of the U.S. Marshall's Fugitive Task Force.  Supplemental Rule 1925(b) Statement (6/22/17), § 5.

Detective Ford testified that he attempted to serve an arrest warrant for Appellant on several occasions following its assignment to him on July 8, 2014.  N.T. 6/30/16, pp. 102-104.  Based on information received, he finally located and arrested Appellant in a motel in Glassboro, New Jersey, on July 14, 2014.  N.T. 6/30/16, pp. 103-105.  The detective's efforts were documented in his notes.  N.T. 6/30/16, pp. 105-105; C-26.

As with the testimony of Detective Knoll, the evidence was only offered to explain the course of the investigation, specifically the delay in arresting Appellant and his fugitive status.  As such, the evidence was not hearsay and was admissible.  See § 2.c., *supra*.     Moreover, the substance of the statement was basically covered in Detective Ford's testimony.    N.T. 6/30/15, pp. 102-106.

Because exhibit C-26 was offered to explain the course of Warrant Task Force Detective Ford's piece of the investigation, and because it essentially paralleled his in-court testimony, there was no error in admitting the exhibit.

Accordingly, for all the reasons set forth herein, the judgments of sentence should be affirmed.

13

By the Court:

Campbell, J.

14