J-S10012-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                  :            PENNSYLVANIA
                                                  :

             v.                                     :
                                                :
                                                :

JOSE FIGUEROA, JR.                    :
                                                :
             Appellant                :     No. 955 MDA 2020

Appeal from the Judgment of Sentence Entered June 10, 2020
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001023-2018

BEFORE:    MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:            FILED May 14, 2021

      Jose Figueroa, Jr. (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of one count each of rape by forcible compulsion, sexual assault, unlawful restraint, and robbery, and two counts each of criminal conspiracy.[1] We affirm.

      The trial court described the facts underlying Appellant's convictions as follows:

> . . . [The Victim] in this case, purchased her first car — a 2000 Buick Century — on March 7, 2017. On that evening at about 9:00 p.m., [the Victim] reached out to "Quan" via Facebook. Although [the Victim] only knew Quan by his nickname, he was later identified as Jaquan Watson. According to [the Victim], Quan was a trusted friend, so she made a plan to get together with him.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 3124.1, 2902(a)(1), 3701(a)(1)(ii), and 903, respectively.

[The Victim] drove her car to a convenience store on 17th Street near Hall Manor in Harrisburg to meet him, and their plan was to smoke marijuana in the Buick. Upon her arrival at 10:00 p.m., Quan got into [the Victim's] front passenger seat, and a friend of Quan's who [the Victim] had never met got into the back seat. Quan told [the Victim] that his friend was cool and not to worry. Quan's friend was later identified as [Appellant].

The three of them went for a 1½ hour joyride through Harrisburg while smoking marijuana. They ended up in a parking lot on the way back to the convenience store and Quan and [Appellant] got out of the car while [the Victim] remained in the driver's seat. There were other people around, including another man who came up to the car, and "they were just standing around talking, showing off [a] gun." They were all passing the gun around and looking at it. After about 20 minutes, Quan got into the back seat of [the Victim's] car and [Appellant] got into the front passenger seat. [The Victim] asked where she was dropping them off and at that point Quan asked where the money was. [The Victim] asked him what money he was referring to and Quan started "rummaging," so [the Victim] opened her glove compartment and told him to take it. Quan put the gun to [the Victim's] head while telling her to drive and not make any sudden moves; he directed her to turn down an alley. [The Victim] said, "I'm not going down an alleyway so you can kill me," to which Quan responded that they were not going to kill her. While [the Victim] was driving, [Appellant] asked Quan about condoms. [The Victim] ended up pulling over onto a street, not an alley, and was told to take off her pants. Quan still had the gun pointed at [the Victim's] head from the back seat.

Quan and [Appellant] made [the Victim] push her car seat all the way back and told her to spread out across the car as quickly as possible. While leaning back, [the Victim] was forced to perform oral sex on Quan, who was still in the back seat. At the same time, [Appellant] put a plastic bag on his penis in the front seat and was inserting it into [the Victim's] vagina. [The Victim] testified that [Appellant] was having trouble maintaining an erection and was using his fingers to get her vagina wet. Quan ejaculated on [the Victim's] face, but the assault did not stop. [The Victim] testified, "Quan's friend was like make her suck your dick again just so he can try to, you know, get up and finish the rape. And I end up sucking Quan's penis again while he's [Appellant] still raping me, trying to rape me with the bag."

After the assault ended, Quan and [Appellant] told [the Victim] that they were going to take her car, so she grabbed her keys and phone and opened the car door. As soon as she grabbed the keys, [Appellant] pulled her in an attempt to get the keys and they ended up tussling back and forth. Quan proceeded to hit [the Victim] on the head with the pistol repeatedly, at least six times, but [the Victim] was able to flee from the car. At that point she was wearing no pants, and was only dressed in a hoodie, one boot on her left foot, and one sock on her right foot. After running through yards and banging on some doors, [the Victim] called 911.

When the officers arrived, they wrapped [the Victim] in a blanket. While she was with the officers [the Victim] received a phone call from [Appellant]; she told the officers that this was "him" and put [Appellant] on speaker after the police told her to go ahead and answer the call. [The Victim] recalled that he said "Oh, we're good though, right?" [The Victim] responded, "No, you raped me. You raped me. What do you mean we're good?" [The Victim] wanted the police to know where he was, so she then told [Appellant] that they were "good" and asked where he was. [Appellant] mentioned a building number, and then [the Victim] was taken to the hospital via ambulance; she did not recall the ambulance ride.

When asked about any photographs taken that night, [the Victim] recalled suggesting, prior to the rape, that the three of them take pictures to post on Instagram and Facebook. The photos, which were admitted at trial, depicted one of [the Victim] in the front seat of the car and [Appellant] in the back, before they pulled over in the parking lot. Another photo showed Quan, but it was too dark to identify him. When asked in the courtroom who raped her with a plastic bag, [the Victim] identified [Appellant].

* * *

Sergeant Kyle Gautsch of the Harrisburg City Police had the opportunity to speak with Detectives Jason Paul and Jon Fustine about the investigation of [the Victim's] rape. During the course of that discussion, Sergeant Gautsch observed a series of photographs that had been taken off of [the Victim's] phone. Upon viewing the photos, Sergeant Gautsch believed he recognized one of the individuals depicted. Specifically, he thought the person with Jayquan (Quan) Watson was Tito Hernandez, someone

Sergeant Gautsch had interacted with multiple times during the years he was a school resource officer at the Lincoln Elementary School as part of the Harrisburg Police Bureau School Resource Unit. The identification resulted in charges being filed against Tito Hernandez. However, after concern on the part of law enforcement as to whether a correct identification had been made, such charges against Mr. Hernandez were immediately withdrawn. DNA evidence had been recovered at the scene and the police officers were instructed to wait for the DNA confirmation to ensure they arrest the correct person. Buccal swabs were taken from Jayquan (Quan) Watson, [Appellant], and Tito Hernandez.

* * *

The Commonwealth called additional expert witnesses at trial. The first one to testify was Veronica Miller, a forensic DNA scientist employed by the Pennsylvania State Police. Ms. Miller analyzed the following DNA samples: two swabs from [the Victim's] face (Q-l), two swabs from [the Victim's] left hand (Q-2), one swab from the plastic bag (Q-3), and two additional swabs from the plastic bag (Q-4). It was Ms. Miller's understanding that the referenced plastic bag was the one found outside of [the Victim's] vehicle. . . . [A]s to the two swabs taken from the plastic bag, Ms. Miller's findings were as follows:

> In all the areas that we test, the DNA profile obtained from the known reference sample from [Appellant], Item Q4, matches the DNA profile obtained from the sperm fraction of the swab collected from the plastic bag, which was Item Q3M.
>
> The non-sperm fraction of the swab collected from the plastic bag, which was Item Q3F, and the sperm fractions of the swabs collected from the plastic bag, which was Item Q4M. So there were two separate swab samples taken from that plastic bag . . . Those DNA profiles matched the DNA profile from [Appellant].

Ms. Miller also testified that Tito Hernandez could not be included as a contributor to the interpretable DNA profiles obtained from the evidence in this case.

- 4 -

Trial Court Opinion, 10/28/20, at 1-4, 6, 10-11 (record citations and footnotes omitted).

On March 12, 2020, following a four-day trial, a jury convicted Appellant of the aforementioned crimes. On June 10, 2020, the trial court sentenced Appellant to an aggregate 19 to 40 years of imprisonment, to be served consecutively to any other sentences Appellant was serving. Appellant timely filed post-sentence motions, which the trial court denied on June 24, 2020. This timely appeal followed.[2]

Appellant presents three questions on appeal:

1. Whether the evidence presented by the Commonwealth at trial was not sufficient to prove the charges of rape, criminal conspiracy to commit rape, robbery, criminal conspiracy to commit robbery?

2. Whether the trial court erred when it denied Appellant's post sentence motion for a new trial based on the weight of the evidence?

3. Whether the trial court imposed an unreasonable and excessive sentence and the trial court abused its discretion or the sentence is contrary to the fundamental norms underlying the sentencing process when it imposed its sentence without consideration of the factors set out in 42 Pa.C.S. § 9721(b)?

Appellant's Brief at 9 (underlining and unnecessary capitalization omitted).

_____

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

In his first issue, Appellant claims the evidence was insufficient to sustain his convictions for rape, conspiracy to commit rape, robbery, and conspiracy to commit robbery.[3]  Appellant's Brief at 18-19.  These claims are waived.

We recognize:

> A claim challenging the sufficiency of the evidence presents a question of law. **Commonwealth v. Widmer**, 560 Pa. 308, 744 A.2d 745, 751 (Pa. Super. 2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." **Commonwealth v. Hughes**, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." **Id.**

Our Supreme Court has instructed:

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> **Commonwealth v. Ratsamy**, 594 Pa. 176, 934 A.2d 1233, 1236 n.2 (2007).

_____

[3] Appellant does not challenge his convictions for sexual assault or unlawful restraint.

***Commonwealth v. Thomas***, 65 A.3d 939, 943 (Pa. Super. 2013).

Instantly, Appellant has failed to develop a legal argument. ***See*** Appellant's Brief at 18-19. First, Appellant disregards our standard of review, which requires that we view the evidence in a light most favorable to the Commonwealth as verdict winner; rather, he discusses the evidence in the light most favorable to him, and ignores the fact that this Court does not re-weigh evidence or engage in credibility determinations. ***Id.*** In addition, Appellant failed to identify in his Rule 1925(b) statement what elements of the convictions he is challenging, and does not cite pertinent legal authority.

> The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, we observe that the Commonwealth Court, our sister appellate court, has aptly noted that [m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.

***Coulter v. Ramsden***, 94 A.3d 1080, 1088-89 (Pa. Super. 2014) (citations omitted). ***See also Commonwealth v. Crosley***, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted) (it is well settled that "even the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant."); ***Commonwealth v. Castelhun***, 889 A.2d 1228, 1232 (Pa. Super. 2005) ("the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses."). Accordingly,

Appellant's sufficiency claim is waived.[4] ***See Commonwealth v. Liston***, 941

A.2d 1279, 1285 (Pa. Super. 2008) (*en banc*), *affirmed in part and vacated in*

*part*, 977 A.2d 1089 (Pa. 2009); Pa.R.A.P. 2101.

In his second issue, Appellant challenges the weight of the evidence.

Appellant's Brief at 19-21.  We have stated:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact.  Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice.  A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Boyd***, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en*

*banc*) (citation and quotation marks omitted).  "Thus, the trial court's denial

---

[4] Even in the absence of waiver, this claim lacks merit.  In his well-reasoned opinion, the Honorable Scott Arthur Evans, sitting as the trial court, discusses the evidence and explains why it was sufficient to sustain the verdicts.  Trial Court Opinion, 10/28/20, at 1-16. The record supports Judge Evans' analysis, and had Appellant not waived this issue, we would adopt the court's reasoning as our own.

of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879-80 (Pa. 2008) (citation omitted).

Here, the trial court stated:

This [c]ourt has no reluctance in rejecting [Appellant's] reasons in support of a new trial based on weight of the evidence. The jury weighed all evidence presented, evaluated [the Victim's] testimony, and found her credible as it was permitted to do. The jury was entitled to resolve any inconsistencies in the evidence highlighted by [Appellant], and did so. A review of the record reveals nothing that would rise to the level of the evidence being so tenuous, vague, and uncertain that the verdict shocks the conscience of the [c]ourt; rather, quite to the contrary. There is no merit to [Appellant's] challenge.

Trial Court Opinion, 10/28/20, at 22. We agree. Fact-finding and credibility determinations are matters for the jury. The record reflects that the jury credited the testimony of the Commonwealth's witnesses, and sitting as the finder of fact, was free to do so. ***See Commonwealth v. Griscavage***, 517 A.2d 1256, 1259 (Pa. 1986). Appellant's weight of the evidence claim is without merit.

In his final issue, Appellant challenges the discretionary aspects of his sentence. Appellant's Brief at 21-22. There is no absolute right to challenge the discretionary aspects of a sentence on appeal. ***See Commonwealth v. Hill***, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where the appellant has preserved the sentencing challenge for appellate review by raising it in a post-sentence motion, he must (1) include in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary

- 9 -

aspects of a sentence pursuant to Pa.R.A.P. 2119(f); and (2) show there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Hill*, 66 A.3d at 363-64.

Appellant has included a Rule 2119(f) statement in his brief. **See** Appellant's Brief at 16-17. We therefore examine the statement to determine whether a substantial question exists. Appellant asserts:

> In the case *sub judice*, the trial court abused its discretion when it offered its opinion to future proceedings and failed to consider issues of protection of the public, the gravity of the offense as it relates to the community, and the rehabilitative needs of the defendant as required by 42 Pa.C.S. § 9721(b).

Appellant's Brief at 17; **see also id.** at 21-22 (claiming trial court failed to assess Appellant's rehabilitative needs because it did not consider mitigating circumstances including Appellant's youth and fact that Appellant was not the instigator in the crimes).

Appellant does not raise a substantial question. **See Commonwealth v. Moury**, 992 A.2d 162, 171 (Pa. Super. 2010) ("An allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question."). In any event, the court in this case had the benefit of a pre-sentence investigation report. "Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."

***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).  Thus, Appellant's

final claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>05/14/2021</u>