**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Christopher THOMAS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 6, 2012.
Filed April 3, 2013.

Jeremy–Evan Alva, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: SHOGAN, J., WECHT, J., and STRASSBURGER, J.*

OPINION BY WECHT, J.

Christopher Thomas ["Appellant"] appeals his June 30, 2011 judgment of sentence. On March 21, 2011, a jury convicted Appellant of simple assault,[1] recklessly endangering another person,[2] and criminal conspiracy to commit aggravated assault.[3]

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. § 2701.

2. 18 Pa.C.S.A. § 2705.

3. 18 Pa.C.S.A. § 903(a)(1); § 2702(a)(1).

On June 30, 2011, Appellant was sentenced to six to twenty months of house arrest and a consecutive three-year term of probation. We affirm.

The trial court summarized the factual history of this case as follows:

> Testifying through a Cambodian interpreter, the complainant Dany Hang (Hang) recounted that in the early evening of September 22, 2009, she left her apartment in the 5700 block of North 5th Street to retrieve a baby bottle from her car, which was parked on the street. When bending down into the car to find the bottle, she felt something cold against her waist and heard someone say that if she turned around she would be shot. She was then punched and kicked by five people. She saw that three of her assailants were Cambodian and that the other two were black males. From the stand, she identified the Cambodians as Thoeun Tha, Rithy Tha and Thea Tha. She did not recognize the black males and could not remember their faces.

> Rithy Tha was the first to punch her. Then the other four people joined in. She fell to the ground after multiple blows and her assailants began to kick her. She called to Vu Cao, her boyfriend, who was in the apartment they shared with her toddler son. She remembered that someone said, "Right now this is all we're going to hit you. Next time we're going to shoot you" and then the five walked away.

> Bloodied, Hang stood up, moved toward the intersection, and called out for help; two police officers who happened to be parked in the parking lot of a school at that location heard her cries. Hang directed the two officers' attention to five people walking down the street, indicating that they had assaulted her. She remembers an officer placing Thea Tha in a police car. She fainted and awoke in the hospital.

> Also testifying through an interpreter, Hang's boyfriend, Vu Cao (Cao), said that when he heard Hang call for him, he looked out from the apartment kitchen window on the second floor and saw five people; two of whom were pulling Hang's hair and punching her. He ran downstairs, deposited the child with the landlord who was on the first floor and went outside. He encountered the police who were responding to Hang's cries and told them that the five people who were walking away had assaulted Hang. He testified that he recognized Thea Tha and Thoeun Tha among the five. From the stand, he identified the males as Rithy Tha, Christopher Thomas and Carlton Finney.

> Cao does not know what the police did then. He recalls that Hang was taken away by ambulance and that he was taken to a police station where he gave a statement. Cao knew the three Cambodians because they were the adult children of his former girlfriend, Mao Inn (Inn).

> Henry Schoch (PO Schoch) and Nicholas Schoeniger (PO Schoeniger) were the uniformed officers in the marked patrol car in the Lowell Elementary School lot in the 5800 block of 5th Street at the time of the incident. PO Schoch was the driver and PO Schoeniger was seated in the passenger seat. Responding to Hang's calls for help, PO Schoch drove out of the lot to 5th and Grange Streets where they found Hang. PO Schoch attempted to speak to Hang who pointed to the five defendants who were walking away. Almost immediately, Cao appeared and he too pointed to the departing five. As they walked away, the five were looking in PO Shoch's direction. There were no other pedestrians on the

street. After ordering the group to stop, PO Schoeniger apprehended four of the five: Rithy Tha, Thea Tha, Carlton Finney and Christopher Thomas. The police recovered a gun from Carlton Finney.

PO Schoch did not know the identity of the fifth person who walked away; he could say only that she was an Asian female. PO Schoeniger knew only that the person was a female. The police did not pursue the departing female because their "hands were full" with the other four defendants, the witness and the victim.

Cao and Hang also testified that two days before the September 22 incident, there had been a confrontation between Mao Inn and Hang at a temple where Cao, Hang and Inn worshiped. The dispute arose out of the relationship that Cao had with Inn before he became Hang's boyfriend. That relationship also accounted for Cao's personal knowledge of Inn's adult children, defendants Thea Tha, Rithy Tha and Thoeun Tha. Defendant Thoeun Tha testified that she was not at the scene of the crime. Defendant Thea Tha testified that she alone was responsible for the attack on Hang and none of the other defendants were involved. None of the other defendants took the stand.

Regarding the assault and conspiracy charges, the verdict sheet asked the jury to answer with respect to each defendant the question whether he or she was guilty of (a) aggravated assault, (b) simple assault and (c) criminal conspiracy to commit aggravated assault.

Defense counsel made various objections during the trial. First, there was a motion for mistrial on the ground that the Commonwealth had committed a discovery violation by failing to turn over an affidavit in support of an arrest warrant. The court denied this motion, but barred its admission into evidence. Second, the court denied a motion for mistrial on the ground that a photo identification of Thoeun Tha by Hang was unduly suggestive. Third, the court denied a motion for mistrial stemming from the Commonwealth's use of the word "assault" during her examination of witnesses. Fourth, over objection, the court allowed Detective Steven Grace to read a statement that Hang had given a few days before she testified at trial. Finally, the court rejected defense objections to jury charges on the photo identification evidence and on "flight."

Trial Court Opinion ["T.C.O."], 12/01/11, at 3–7 (citations to Notes of Testimony omitted).

As noted above, Appellant was found guilty of simple assault, recklessly endangering another person, and criminal conspiracy to commit aggravated assault. On March 23, 2011, Appellant filed a motion for extraordinary relief regarding the conspiracy to commit aggravated assault conviction. On June 30, 2011, the trial court denied Appellant's motion and sentenced Appellant to six to twenty months of house arrest and a consecutive three year term of probation. On July 28, 2011, Appellant timely appealed. Appellant timely filed a Pa.R.A.P.1925(b) concise statement of errors complained of on appeal. On December 1, 2011, the trial court filed a Rule 1925(a) opinion.

Appellant raises a single issue for our review:

1. Did the trial court err in upholding a jury's verdict of guilty on the charge of conspiracy to commit aggravated assault when (1) the defendant was part of a small group of assailants comprised of three males and two females who committed an assault

upon a victim, (2) the victim sustained only minor injuries as a result of the assault, (3) the two female assailants inflicted the vast majority of the injuries upon the victim during the assault, (4) none of the assailants used any weapons during the assault, (5) none of the assailants said anything prior to or during the assault indicating that they intended to inflict serious bodily injury upon the victim during the assault, and (6) the group ceased the assault and left the victim alone without any intervening act leading them to do so?

Appellant's Brief at 4.

Appellant's issue presents a challenge to the sufficiency of the evidence. A claim challenging the sufficiency of the evidence presents a question of law. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *Id.*

Our Supreme Court has instructed:

[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be consid-ered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

 Appellant asserts that the evidence was insufficient to sustain his conviction for criminal conspiracy to commit aggravated assault. A criminal conspiracy conviction requires proof of:

(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

*Commonwealth v. Galindes*, 786 A.2d 1004, 1010 (Pa.Super.2001) (quoting *Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139, 1162 (2000)). Circumstantial evidence can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. *Commonwealth v. French*, 396 Pa.Super. 436, 578 A.2d 1292, 1294 (1990). "These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail." *Id.* Aggravated assault, the crime underlying Appellant's conspiracy conviction, occurs when a person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is de-

fined as: "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S.A. § 2301.

Appellant asserts that the evidence was insufficient to support his conspiracy conviction because neither he nor his co-defendants committed an overt act in pursuit of aggravated assault. Appellant claims that, because he and his co-conspirators did not cause serious bodily injury, the Commonwealth was required to prove that Appellant and his co-conspirators committed an overt act in an **attempt** to cause serious bodily injury. Appellant's Brief at 17–21; 25–26. Appellant further asserts that, in order to prove an attempt in this context, the Commonwealth must prove that "the accused acted in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another along with the intent to inflict serious bodily injury." Appellant's Brief at 19 (citing *Commonwealth v. Gruff*, 822 A.2d 773, 776–77 (Pa.Super.2003)). Appellant avers that neither he nor his co-conspirators had the requisite intent to commit serious bodily injury. Therefore, he concludes, the evidence was insufficient to sustain a conviction of criminal conspiracy to commit aggravated assault. We disagree.

■ A conviction for conspiracy requires only an intent to commit a crime, an agreement with a co-conspirator, and an overt act in furtherance of the conspiracy. *Galindes*, 786 A.2d at 1010. The Commonwealth may meet this burden even if the conspirators fail to commit the underlying crime. "Conspiracy to commit a crime and the underlying crime itself are two entirely separate offenses with separate elements required for each." *Commonwealth v. Johnson*, 719 A.2d 778, 791 (Pa.Su-

per.1998). Therefore, to sustain the conviction for criminal conspiracy, it need not be established that Appellant committed aggravated assault, provided that Appellant had the intent to do so.

■ Appellant is incorrect in asserting that, because the jury acquitted Appellant of aggravated assault, we must deem the evidence insufficient to sustain a finding of conspiracy to commit aggravated assault. "[T]he mere fact that appellant was acquitted of the underlying crime is irrelevant to his guilt on the conspiracy charge." *Johnson*, 719 A.2d at 791 (Pa.Super.1998). Further, "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." *Commonwealth v. Bricker*, 397 Pa.Super. 457, 580 A.2d 388, 389 (1990).

■■ Appellant avers: "Had Appellant been found guilty of conspiracy to commit simple assault, Appellant would have no objection as a matter of law." Appellant's Brief at 17. Appellant misses the point. "[T]he ultimate gradation of the crime accomplished does not in and of itself delimit the degree of crime originally planned— the crime ultimately accomplished does not retroactively limit the scope of the original conspiracy." *Commonwealth v. Weimer*, 602 Pa. 33, 977 A.2d 1103, 1105 (2009). The jury may have found that Appellant and his co-conspirators had the intent to commit aggravated assault, and may further have found that they failed in the commission of the crime. Or the jury may simply have reached an inconsistent verdict. Inconsistent verdicts are permissible:

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which

counts to convict in order to provide a defendant with sufficient punishment. *Commonwealth v. Stokes*, 38 A.3d 846, 855 (Pa.Super.2011) (quoting *Commonwealth v. Frisbie*, 889 A.2d 1271, 1273 (Pa.Super.2005) (internal citations omitted)).

Regardless, our inquiry remains the same, notwithstanding Appellant's attempt to reframe the issue. In order to sustain a conviction of criminal conspiracy to commit aggravated assault, the Commonwealth need only establish intent to commit or aid in the commission of aggravated assault, an agreement with a co-conspirator, and an overt act in furtherance of the conspiracy. *Galindes*, 786 A.2d at 1010. We have found the evidence sufficient to sustain a conviction for conspiracy to commit aggravated assault in circumstances similar to the case before us.

In *French*, four defendants were convicted of various crimes, including criminal conspiracy to commit aggravated assault. 578 A.2d at 1293–94. The group included two siblings and their paramours. *Id.* at 1293. The four defendants assaulted a lone man, pinned him to the ground, and continued to beat him. *Id.* When police arrived at the scene, the four defendants turned their attack against the officers. *Id.* We determined that all individuals involved acted as a group in concert. *Id.* at 1294. We held that "the actors' relationships and their conduct before, during and after the criminal episode established a unity of criminal purpose sufficient for the jury to find a conspiracy beyond a reasonable doubt." *Id.* at 1294–95.

In *Commonwealth v. Poland*, the defendant, along with a group of other individuals, attacked a passer-by on the subway, battering her face and knocking out one of her teeth. 26 A.3d 518, 519 (Pa.Super.2011). Together, the group fled the scene of the attack. *Id.* at 520. Shortly thereafter, the victim and a police officer identified the individuals who participated in the attack. *Id.* at 520. In *Poland*, as in *French*, we determined that the group of attackers had established a "unity of criminal purpose." *Id.* at 523; *see also French*, 578 A.2d at 1294–95. We held that acting together before, during, and after an attack on another individual suffices to show a unity of criminal purpose for purposes of sustaining a conviction for criminal conspiracy to commit aggravated assault. *Id.*

■ In the present case, Appellant and his co-conspirators established a unity of criminal purpose similar to that shown by the defendants in *French* and *Poland*. *See Poland*, 26 A.3d at 523; *French*, 578 A.2d at 1294–95. Appellant and four other individuals approached the victim together from behind, and one of the defendants placed a cold, metal object against her waist. The victim testified that all five individuals punched her repeatedly on her head, face, and the entire left side of her body. Appellant and the other individuals left the scene of the incident together. When police arrived, the victim identified the five individuals walking away from the scene together. Notes of Testimony ["N.T."], 3/11/11, at 23–32. Officers close to the scene of the incident apprehended four of the five individuals, including Appellant. N.T., 3/16/11 Vol.2, at 92–93.[4]

The Commonwealth presented evidence that defendant and his co-conspirators approached the victim as a group, beat the victim, walked away from the scene together, and were arrested together. This evidence was sufficient to establish that Appellant and the four additional co-conspirators acted with a "unity of criminal purpose." *French*, 578 A.2d at 1294–95. Additionally, all individuals involved in the

**4.** We note that there are two volumes of Notes of Testimony dated 3/16/11 and labeled "Volume 1." For identification purposes, we refer to the longer volume of testimony, containing 151 pages, as "Vol.2."

beating of the victim were either related to each other or close friends. *See id.* at 1294. Taking all factors into consideration, and looking at the evidence in the light most favorable to the Commonwealth as verdict winner, these relationships and this sequence of events established evidence sufficient to allow the jury to find beyond a reasonable doubt that Appellant and the other co-defendants engaged in a criminal conspiracy to commit aggravated assault. *See Poland,* 26 A.3d at 523; *French,* 578 A.2d at 1294–95.

Appellant compares the facts of the case before us to several inapposite cases that discuss materially different facts and that do not contemplate a conviction for conspiracy. *See Commonwealth v. Robinson* 817 A.2d 1153 (Pa.Super.2003) (evidence insufficient to sustain aggravated assault conviction where defendant's accomplice struck victim in the back with a handgun); *Commonwealth v. Bryant,* 282 Pa.Super. 600, 423 A.2d 407 (1980) (evidence insufficient to sustain aggravated assault conviction where defendant threw one victim to the ground and kicked different victim once); *Commonwealth v. Alexander,* 477 Pa. 190, 383 A.2d 887 (1978) (evidence insufficient to sustain aggravated assault conviction where defendant punched victim's face once). Appellant's discussion of cases involving a defendant who inflicted a single punch or kick to a victim is irrelevant. Appellant was with a group of four other individuals who repeatedly kicked and punched the victim, causing her to collapse to the ground, where they continued their attack. We find the evidence sufficient to sustain the conspiracy to commit aggravated assault conviction.

Judgment of sentence affirmed. Jurisdiction relinquished.