J-S25045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HASAN MUHAMAD | : | |
| | : | |
| Appellant | : | No. 1930 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 9, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003714-2019

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:             **FILED AUGUST 31, 2021**

Hasan Muhamad (Muhamad) appeals from the September 9, 2020 judgment of sentence imposed by the Court of Common Pleas of Philadelphia County (trial court) following his convictions for aggravated assault, conspiracy, simple assault and recklessly endangering another person.[1]  We vacate his conviction for conspiracy and affirm in all other respects.

The trial court summarized the evidence adduced at trial as follows:

On February 16, 2019, [Muhamad] was at the deli located at 2139 65th Avenue.  The entire incident was caught on video which was recovered by Philadelphia Police Detective Christopher Sweeney. There [Muhamad] "witnessed" an altercation involving Khaleemah Morrison, the mother of his child, and the victim, Kendra Garrett. Upon becoming aware of the fight between the two women,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a), 903, 2701(a) & 2705.

[Muhamad] who measures 6'4" and 190 lbs., said he "went over there...to help [Morrison], [because he] didn't want her to get beat up..." and joined in the fracas. At that point, [Muhamad] stated he "threw a few punches" and then "pushed her [the victim] [and] threw her to the ground, a little bit [and] she fell." (Trial Tr. 51:13, 51:25 -- 52:2). However, the store video established that [Muhamad] made no attempt to break up the fight or remove his child's mother from the altercation, rather he joined in the fight, punched and kicked the victim, pushed her outside, and threw her to the ground. The video confirmed the fight started between the two women, but it was completed by [Muhamad].

Detective Sweeney interviewed the victim at the hospital, where he observed that she was in a hospital bed, looking disheveled, with her arm mobilized. The hospital records show that Ms. Garrett, who is 5'5" and 170 lbs., was treated at Albert Einstein Medical Center for pain to her right arm and abrasions to her right cheek. She was also observed both by the detective and hospital staff with dry blood on both her cheek and chest.

Trial Court Opinion, 1/19/21, at 2 (cleaned up, some citations omitted).

Following a non-jury trial, Muhamad was convicted of the above-mentioned offenses. The trial court sentenced him to concurrent sentences of 4 to 8 years' incarceration each for aggravated assault and conspiracy. Muhamad timely appealed and he and trial court have complied with Pa.R.A.P. 1925.

Muhamad raises one issue on appeal: whether the evidence was sufficient to support his conviction for conspiracy when there was no evidence that he entered into an agreement with Morrison to commit the aggravated assault or that they shared the intent to commit the assault.[2] He argues that

_____

[2] Our standard of review is well-settled:

*(Footnote Continued Next Page)*

- 2 -

"the type of spontaneous, multi-party conduct that occurred in the instant case proves neither the shared intent nor the prior agreement necessary to establish a conspiracy." Muhamad's Brief at 12. The Commonwealth concedes on appeal that relief is due. Commonwealth's Brief at 7-9.

To sustain a conviction for conspiracy, "the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Fisher*, 80 A.3d 1186, 1190 (Pa. 2013) (citation

_____

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lopez*, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

omitted); 18 Pa.C.S. 903(a). Thus, all conspiracies are based upon a "common understanding or agreement" between the participants and "the mutual specific intent to carry out a particular criminal objective." *Commonwealth v. Chambers*, 188 A.3d 400, 410 (Pa. 2018) (citations omitted). A relationship or association between the actors alone is insufficient to prove that such an agreement existed. *Id.*

This instant case is on all fours with *Chambers*. There, the defendant engaged in a fist fight with the victim, eventually kneeling on the victim's back while striking his torso. *Chambers*, *supra*, at 403-04. At the same time, one of the defendant's companions approached the fray and sprayed the victim in the face with mace. *Id.* at 404. The defendant was convicted of conspiracy, possession of an instrument of crime and aggravated assault with a deadly weapon based on the mace used by his companion. *Id.* at 405-06. In reversing his convictions, our Supreme Court noted that in assault cases, an individual might enter a fight unprompted by the other participants without having any shared agreement or common understanding:

> Consider a case in which two people engage in a fight and another person joins in after the fight has begun. If the intervening person decided, entirely upon her own accord, to join the fight, no conspiracy would exist, regardless of her relationship to either combatant. The conspirators must at some point agree (and intend) to commit—or solicit or aid in the planning of—an assault. One joining the fight, but acting only upon her own volition and motivation, does not make a conspiracy.

*Id.* at 411. Because there was no evidence that the defendant in *Chambers* reached any agreement with his companion who sprayed the victim with the

mace, the Court held that there was insufficient evidence to support his convictions for aggravated assault, possession of an instrument of crime and conspiracy.

Here, the trial court concluded that Muhamad's testimony, where he said he only intervened in the fight to protect Morrison, was incredible and self-serving. Trial Court Opinion, 1/19/21, at 5. It explained: "What this court did not see on that video, was an attempt to prevent the women from fighting. Rather, this court saw a man who is 20 lbs. heavier and a foot taller than the victim, intentionally join in the fight alongside his child's mother, *instantly creating and furthering a conspiracy*." ***Id.*** (emphasis added). As explained in ***Chambers***, spontaneously joining into a fray, without more, does not "instantly" create a conspiracy in absence of an agreement between the defendant and the alleged co-conspirator.[3] The undisputed fact that Muhamad

_____

[3] The cases the trial court cites in support of this conclusion are distinguishable. In ***Commonwealth v. Murphy***, 844 A.2d 1228 (Pa. 2004), the Court reiterated that indirect evidence of intent or conspiratorial agreement can support a conviction for conspiracy as long as the existence of an agreement is proven beyond a reasonable doubt. ***Id.*** at 1238. The Court concluded that the evidence in that case supported the existence of an agreement when the defendant helped facilitate a narcotics sale on behalf of his co-defendant. ***Id.*** at 1238-39. Similarly, ***Commonwealth v. Thomas***, 65 A.3d 939 (Pa. Super. 2013), involved a group assault with additional circumstantial evidence that the participants had coordinated and agreed to commit the crime together. All of the co-conspirators approached the victim from behind at the same time and began repeatedly striking her on her head, face and the left side of her body. ***Id.*** at 945. One of the co-conspirators pressed a metal object to the victim's back to prevent her from fleeing before the assault began and all five individuals left the scene together. ***Id.*** Finally,
*(Footnote Continued Next Page)*

participated in the fight and struck the victim multiple times does not establish that he entered into an agreement with Morrison to do so.

Here, the videos of the altercation taken from various angles inside and outside of the store depict Muhamad entering first and walking toward the cashier, shaking hands with several of the store's patrons along the way. Morrison enters through the same door shortly thereafter and approaches the victim. She does not look in Muhamad's direction before speaking with the victim and grabbing her by her jacket. Muhamad, who is talking to another individual in the front of the store, appears to hear the commotion and walks back toward the fight. He strikes the victim multiple times and appears to be yelling at her before shoving her out of the door. Morrison follows the two outside. Once outside, Muhamad strikes the victim several more times and pushes her against the wall before walking away from the store. Morrison follows him but Muhamad does not appear to speak to or acknowledge her.

We agree with Muhamad and the Commonwealth that the evidence here was insufficient to show that he and Morrison entered into a conspiratorial agreement to assault the victim. Muhamad is shown entering the fray spontaneously, and there is no interaction between Morrison and Muhamad during the altercation to suggest that they agreed to act in concert. This is

---

the co-conspirators were related or close friends with each other. *Id.* at 946. We concluded that "these relationships and this sequence of events" established sufficient evidence of a conspiracy. *Id.*

precisely the situation described in **Chambers**, where the Court reiterated that merely participating in a fight, in absence of an agreement with the alleged co-conspirator, is insufficient to sustain a conviction for conspiracy. **Chambers**, **supra**, at 411 ("One joining the fight, but acting only upon [his] own volition and motivation, does not make a conspiracy."). Accordingly, we vacate Muhamad's conviction for conspiracy.

However, we agree with the Commonwealth that remand for resentencing is unnecessary because Muhamad received identical, concurrent sentences on the charges of aggravated assault and conspiracy. As a result, vacating the conviction for conspiracy does not upset the trial court's sentencing scheme and resentencing is unnecessary. **See Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006).

Judgment of sentence affirmed in part and vacated in part. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/31/2021