J-A03039-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: R.M., A MINOR

IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: R.M., A MINOR

No. 1159 EDA 2022

Appeal from the Dispositional Order Entered March 8, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0000127-2022

BEFORE: KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KING, J.:                    **FILED APRIL 19, 2023**

Appellant, R.M., appeals from the dispositional order entered in the Philadelphia County Court of Common Pleas, Juvenile Division, finding that Appellant committed the offenses of receiving stolen property ("RSP"), conspiracy, unauthorized use of an automobile ("UUA"), and false identification to law enforcement authorities,[1] and adjudicating him delinquent. We affirm in part, reverse in part, and vacate and remand for further proceedings.

The Juvenile Court set forth the relevant facts of this case as follows:

> At the adjudicatory hearing on March 8, 2022, this [c]ourt heard the testimony of three (3) witnesses, and the stipulated testimony of one (1) additional witness, and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3925; 903; 3928; and 4914, respectively.

viewed two (2) videos. The first witness, Harriet Gibbs, a resident of the State of Delaware, testified that in the evening of January 30, 2022, she had started her car to warm it up, while she waited for her colleague to relieve her of duty at her place of employment. At the time, her car, a 2016 Chevy Malibu with Delaware plate number 331136, was parked outside Ms. Gibb's place of employment. There had been a snowstorm and Ms. Gibbs went back into her workplace to wait and when she looked back outside, she observed her car backing out; once she arrived back outside, the car was pulling off. Ms. Gibbs observed one individual inside the vehicle. The occurrence was immediately reported to the police.

The second witness to testify was Police Officer Mark Dial, Badge Number 6130, assigned to the Philadelphia Police Department's 19th Police District. Officer Dial testified that on the evening of January 30, 2022, around 6:38 p.m., he was on duty near the area of 1500 North 50th Street. Officer Dial testified that a radio call was received indicating a stolen 2016 Chevy Malibu, with a Delaware plate of 331136, was being pinged by OnStar. The Officer surveyed the area for twenty minutes and then located the vehicle in a Lowes parking lot around 7 p.m., unoccupied, and confirmed the plate and [vehicle identification number]. Officer Dial testified that he then entered the Lowes to view the CCTC footage of the parking lot and gave out flash information of the suspects. Officer Dial provided flash of "two males, one a black male wearing a baby blue hoody with a dark block in the center chest of it, and dark colored pants with white shoes" and a second offender, [Appellant], being a "black jacket with a gray hoody underneath and black pants." Surveillance footage of the [Lowes] parking lot showed two males exiting the vehicle. On cross-examination, Officer Dial testified that [Appellant] exited the passenger side of the vehicle, and while he did enter the driver's seat at one point during the video, the vehicle was not moved.

The third witness to testify was Police Officer Raymond Jastrzebski, Badge Number 2445, assigned to the Philadelphia Police Department's 19th District. Officer Jastrzebski testified that he was on patrol in the area and received a radio call of the 2016 Chevy Malibu with Delaware plate 331136 being located in the Lowes parking lot by

Officer Dial, and the subsequent flash information of [Appellant] and [the] other suspect. Officer Jastrzebski was surveying the area with his partner, and observed individuals matching the flash information in the area of Lindenwood and Columbia streets. The officers stopped the individuals in the surveillance footage. Body-worn camera footage of the stop showed [Appellant] in the clothing from the flash information. At this point, [Appellant] was arrested, and charged with three offenses, with the fourth added the day of adjudication. Ms. Gibbs was able to receive her vehicle back on February 2nd or 3rd, 2022.

A third officer did not provide testimony, but there was a stipulation by and between counsel that if called to testify, Officer Ozdemir would testify "that he was brought to the scene to transport two juveniles. He was initially not given a name by [Appellant], and at some point that the video would show, the initial name given to Officer Ozdemir was the name of Adan Jones…by [Appellant]" and [Appellant] was "aware of what the investigation was."[2]

(Juvenile Court Opinion, filed 7/14/22, at 5-7) (internal citations omitted).[3]

On March 8, 2022, at the conclusion of the adjudicatory hearing, the court found that Appellant committed RSP, conspiracy, UUA, and false identification to law enforcement authorities. The court further decided that Appellant was in need of treatment, supervision, and rehabilitation, and adjudicated him delinquent. The court placed Appellant on probation.

On March 28, 2022, Appellant filed a motion seeking leave to file a post-

---

[2] Additionally, the parties stipulated at the adjudicatory hearing that if Appellant's mother were called to testify, she would testify that Appellant has a character for law-abidingness. (N.T. Hearing, 3/8/22, at 36).

[3] This Court was able to review both the surveillance video footage from Lowes and the body-worn camera footage.

dispositional motion *nunc pro tunc* and attached the proposed post-dispositional motion. The court granted *nunc pro tunc* relief the next day. The court denied the post-dispositional motion on April 8, 2022. On May 2, 2022, Appellant timely filed a notice of appeal. On May 4, 2022, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a preliminary Rule 1925(b) statement on May 31, 2022, and supplemental Rule 1925(b) statement on June 9, 2022, with leave of court.

Appellant raises three issues for our review:

> Was not the evidence insufficient to sustain a finding that [Appellant] committed the offenses of receiving stolen property, unauthorized use of automobiles and conspiracy where the prosecution failed to prove that he acted with guilty *mens rea* or entered into any conspiratorial agreement?
>
> Was not the evidence insufficient to sustain a conviction for false identification to law enforcement where the police officers never informed Appellant that he was the subject of an official investigation?
>
> Did not the juvenile court err and abuse its discretion in adjudicating [Appellant] delinquent based solely on the commission of delinquent acts where the evidence as a whole did not support a finding that [Appellant] was in need of treatment, supervision or rehabilitation?

(Appellant's Brief at 4).

In his first issue, Appellant asserts that he was merely a passenger in the stolen vehicle. Appellant argues that the Commonwealth provided no evidence of the relationship between Appellant and the driver of the stolen

vehicle. Appellant contends there were no physical manifestations of theft on the vehicle such that Appellant should have known it was stolen. Appellant claims there was no evidence of traffic violations or any other behavior by the driver which might have given Appellant cause to suspect the vehicle was stolen or that the driver did not have the owner's permission to drive it. Appellant avers that the complainant observed the theft of her vehicle and only saw one person who stole the car. Appellant emphasizes that the complainant did not identify Appellant as the person who stole her vehicle. Appellant claims that he did not enter the vehicle until after someone else stole it. Appellant maintains there was no evidence that Appellant was aware that the driver did not know the owner of the vehicle. Appellant maintains he did not give a false name until after he was arrested. Appellant submits that his post-arrest false identification does not establish guilty *mens rea* at the time he was in the car.

Appellant further argues that no evidence showed he was acting in concert with the driver. Appellant does not dispute that he transitorily possessed and operated the car for a brief time in which he sat in the driver's seat with the keys, during which the rear lights of the car turned off and on. Nevertheless, Appellant insists that his presence inside a recently stolen car is insufficient on its own to establish that Appellant should have known the car was stolen. Appellant insists the court disregarded the unrebutted evidence of Appellant's good character, which should have tipped the scales in

Appellant's favor. Appellant also argues that the Commonwealth introduced no evidence of the relationship between Appellant and the driver of the vehicle, of Appellant's participation in the theft of the vehicle, or any suspicious conduct by Appellant to prove Appellant and the driver were engaged in a conspiracy. Appellant concludes the evidence was insufficient to prove he committed RSP, UUA, and conspiracy, and this Court must grant relief. We disagree.

This Court has explained:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
>
> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.
>
> *In re V.C.*, 66 A.3d 341, 348–349 (Pa.Super. 2013)[, *appeal denied*, 622 Pa. 762, 80 A.3d 778 (2013)] (quoting

- 6 -

> ***In re A.V.***, 48 A.3d 1251, 1252-1253 (Pa.Super. 2012)). The finder of fact is free to believe some, all, or none of the evidence presented. ***Commonwealth v. Gainer***, 7 A.3d 291, 292 (Pa.Super. 2010)[, *appeal denied*, 611 Pa. 631, 23 A.3d 1055 (2011)].

***In Interest of J.G.***, 145 A.3d 1179, 1188 (Pa.Super. 2016).

"A person is guilty of [RSP] if he intentionally receives, retains, or disposes of moveable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a). "As used in this section the word 'receiving' means acquiring possession, control or title, or lending on the security of the property." 18 Pa.C.S.A. § 3925(b). Thus, the elements of RSP are: "(1) intentionally acquiring possession of the moveable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." ***Commonwealth v. Robinson***, 128 A.3d 261, 265 (Pa.Super. 2015) (*en banc*).

Regarding the "guilty knowledge" second element of the crime, "[a] person 'knows' that goods are stolen if he is 'aware' of that fact." ***Id.*** Guilty knowledge may be inferred from circumstantial evidence. ***Id.*** This Court has explained:

> [M]ere possession of stolen property, without more, is not sufficient circumstantial evidence to support an inference of guilty knowledge. … Proof that the goods were recently stolen, however, may provide the jury with sufficient circumstantial evidence to support an inference of guilty knowledge, since the circumstances of possession as

presented by the Commonwealth (the recency of the theft) suggest an explanation for the possession (that the accused was the thief…). In other words, a jury may infer guilty knowledge from evidence of recency, which in turn may require the appellant to offer an alternative explanation of his possession of the stolen item. It is the Commonwealth's circumstantial evidence of guilty knowledge (recency) that compels the need for an explanation, since in the absence of an explanation the jury may infer guilty knowledge beyond a reasonable doubt based upon the Commonwealth's evidence. Even if the accused offers an explanation, the jury may nevertheless find it unsatisfactory and reach a finding of guilty knowledge based upon the recency of the theft.

*Id.* at 267-68 (internal citations and quotation marks omitted). Additional circumstantial evidence of guilty knowledge may include:

[T]he place or manner of possession, alterations to the property indicative of theft, the [offender's] conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the [offender] gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the [offender] to the crime.

*Id.* at 268.

"A person is guilty of [UUA as] a misdemeanor of the second degree if he operates the automobile, airplane, motorcycle, motorboat, or other moto-propelled vehicle of another without consent of the owner." 18 Pa.C.S.A. § 3928(a). "In order to establish the *mens rea* element of the crime of [UUA], the Commonwealth must prove that the accused was at least reckless with respect to the owner's lack of consent to the accused's operation of the vehicle." *Interest of K.G.*, 278 A.3d 934, 939 (Pa.Super. 2022). "The *mens*

*rea* burden under the [UUA statute] is not as strict as the one for [RSP]. It, therefore, follows that the Commonwealth necessarily [satisfies] its burden for the lesser *mens rea* required for" UUA if it satisfies the higher burden for RSP. **Commonwealth v. Carson**, 592 A.2d 1318, 1322 (Pa.Super. 1991), *appeal denied*, 529 Pa. 616, 600 A.2d 533 (1991) (explaining that if unexplained possession of recently stolen property will support inference of guilty knowledge for RSP, it will support with even greater strength inference of recklessness with respect to owner's lack of consent to operate recently stolen automobile for purposes of UUA statute). Further, "an offender need not actually be driving a vehicle to be [guilty] of [UUA]." **Id.** at 1323.

A person is guilty of conspiracy with another person if with the intent of promoting or facilitating the commission of a crime he: "(1) agrees with such other person…that they or one of more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person…in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a). "No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired." 18 Pa.C.S.A. § 903(e).

"Because it is difficult to prove an explicit or formal agreement to commit an unlawful fact, such an act may be proved inferentially by

circumstantial evidence, *i.e.*, the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." **Commonwealth v. Thomas**, 65 A.3d 939, 943 (Pa.Super. 2013). "Circumstantial evidence can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." **Id.**

Instantly, the Juvenile Court explained:

> [Regarding the RSP finding, Appellant] argues that he was merely a passenger and did not establish possession or control over the vehicle. These are not the requirements of this charge. Here, the surveillance footage shows [Appellant] in possession of the car keys to the stolen vehicle, shortly after it was reported stolen, without a satisfactory explanation. [Appellant] also argues that the Commonwealth did not prove [Appellant] knew or should have known the car was stolen or he lacked the owner's consent to drive it. Circumstantial evidence can be used to prove guilty knowledge…. The owner of the vehicle testified she had not given [Appellant], or anyone else, permission to use her vehicle. Additionally, [Appellant] provided a false name to the police after being arrested near the location of the stolen vehicle. Together, this evidence proved to this [c]ourt beyond a reasonable doubt that [Appellant committed RSP].

> \* \* \*

> [Regarding the UUA finding, Appellant] argues the Commonwealth did not prove [Appellant] operated the vehicle or established possession or control of the vehicle, or that he knew or should have known the vehicle was stolen. In the instant case, it is undisputed that the Commonwealth proved by direct evidence that the vehicle was stolen, and the owner had not given [Appellant] permission to operate the vehicle. The owner of the vehicle, Ms. Gibbs, provided testimony explaining that she had not given [Appellant] permission to operate her vehicle, nor did

- 10 -

she even know [Appellant], and her vehicle had been stolen. It is true that the evidence presented to this [c]ourt does not show [Appellant] driving the vehicle, but exiting the passenger side of the vehicle, entering the driver's seat, and then exiting the vehicle again. Additionally, the video surveillance footage demonstrates [Appellant] in possession of the car keys, opening the trunk of the car, and starting and stopping the vehicle multiple times before exiting. While no direct evidence proved that [Appellant] knew the vehicle was stolen, the circumstantial evidence can be inferred to prove guilty knowledge. No explanation was offered as to possession of the recently stolen vehicle, and the body-worn camera footage was stipulated by counsel to show [Appellant] providing a false name to law enforcement. Both facts are circumstantial evidence that this [c]ourt believes establishes [Appellant] had exercised control and had the requisite knowledge of the stolen status of the vehicle. This [c]ourt found the testimony of the [c]omplainant Ms. Gibbs and the multiple officers credible, and combined with the circumstances of the arrest, found the Commonwealth had established [Appellant committed UUA].

\* \* \*

[Regarding the conspiracy finding, Appellant] argues the Commonwealth did not prove he entered into an agreement or had a common understanding to commit an unlawful act. In the instant case, this [c]ourt found the Commonwealth presented ample evidence to sustain a finding of guilt on the charge of conspiracy. The surveillance footage showed two individuals, one being [Appellant], both entering and exiting the stolen vehicle, and passing the car keys between themselves. The two individuals were also arrested together near where the stolen car was located, and both provided false names to police when asked. The direct and circumstantial evidence together proved beyond a reasonable doubt that [Appellant] had engaged in a criminal conspiracy.

(Juvenile Court Opinion at 8-11) (internal citations and footnote omitted).

We agree with the court's analysis. Here, the surveillance footage from

- 11 -

Lowes showed Appellant and other male in possession of the stolen vehicle approximately three hours after it was stolen. *See Carson, supra* at 1321 n.5 (classifying three hours as recent for purposes of inferring guilty knowledge). Although the video footage did not show Appellant driving the vehicle, it showed Appellant sitting in the driver's seat at one point, activating the lights of the vehicle, and passing the keys to the other male at another point. Appellant had no explanation for his possession of the stolen car. Thus, the court was free to infer that Appellant knew the car was stolen to satisfy the guilty knowledge element of RSP. *See Robinson, supra*. Additionally, the fact that Appellant supplied a false name to police upon his arrest is further evidence of Appellant's guilty knowledge. *See id.* Because Appellant had the requisite *mens rea* for RSP, he necessarily had the lesser *mens rea* required to prove UUA. *See Carson, supra*.

Regarding conspiracy, we reiterate that the surveillance footage from Lowes showed that Appellant and his companion occupied the stolen vehicle together while turning it on and off, exchanging the car keys, and taking turns sitting in the driver's seat. The video further showed Appellant and the other male initially exiting the vehicle, walking off together, and returning to the vehicle together. Upon their return to the vehicle, Appellant released the latch on the trunk and looked around the parking lot while his companion searched the bags in the trunk. After they closed the trunk, Appellant handed something to his companion. While the video does not readily depict what

- 12 -

Appellant handed over, the companion clicked a button on the item that Appellant had handed over which activated the lights of the vehicle, demonstrating that Appellant had given the car keys back to his companion. When police apprehended Appellant and his companion several blocks away, they no longer possessed the keys, suggesting they had abandoned them. The parties stipulated that Appellant gave a false name to police upon his arrest. The body-worn camera footage further shows Appellant stating that he resides in Delaware, which is where the vehicle had been stolen. The circumstantial evidence of Appellant's joint conduct with his companion demonstrates that the two acted in concert, and provided a sufficient basis from which the court could infer the existence of a conspiracy between Appellant and his companion. **See Thomas, supra**. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to prove Appellant committed RSP, UUA, and conspiracy. **See In Interest of J.G., supra**.

In his second issue, Appellant argues that the Juvenile Court misinterpreted the stipulation regarding what Officer Ozdemir would have testified to if called as a witness. Appellant asserts that the Juvenile Court interpreted the stipulation as stating that the officer would testify that Appellant **was informed** he was the subject of an investigation and subsequently provided a false name to the police officers. Appellant claims this is a misstatement of the actual stipulation. Rather, Appellant insists the

stipulation was that Appellant gave a false name when he **was aware** of what the investigation was about. Appellant claims this is a crucial distinction because the crime of false identification to law enforcement requires that the police have affirmatively informed the suspect that he is the subject of an official investigation. Appellant claims that whether he had awareness through surrounding circumstances of what the investigation was about is irrelevant to the notice requirement mandated by the statute. Because there was no evidence that police **told** Appellant he was under investigation, Appellant concludes the evidence was insufficient to prove he committed false identification to law enforcement. We agree relief is due.

The Crimes Code defines the offense of false identification to law enforcement authorities as follows:

> **§ 4914. False identification to law enforcement authorities**
>
> **(a) Offense defined.**—A person commits an offense if he furnishes law enforcement authorities with false information about his identity **after being informed** by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

18 Pa.C.S.A. § 4914(a) (emphasis added). To "be informed" for purposes of the statute requires the Commonwealth to "prove that the individual was **told** that he or she was under investigation, and that must occur prior to the individual's presentment of false identity information." **Commonwealth v. Kitchen**, 181 A.3d 337, 345 (Pa.Super. 2018) (*en banc*) (emphasis in

- 14 -

original) (expressly rejecting Commonwealth's argument that person could be "informed" by "surrounding circumstances").

Instantly, the Juvenile Court stated:

> [Appellant] argues that the Commonwealth did not prove [Appellant] was informed he was the subject of an investigation. There was a stipulation between the Commonwealth and [Appellant's c]ounsel that a third police officer would testify that [Appellant] **was informed** he was the subject of an investigation and subsequently provided a false name to the police officers. (**See** N.T. 3/8/22, pg. 28). [Appellant's c]ounsel did not object to this characterization by the Commonwealth at trial, and so this [c]ourt believed that there was ample evidence to sustain a finding of guilt on the charge of False Identification.

(Juvenile Court Opinion at 11-12) (emphasis added).

Nevertheless, the Commonwealth concedes that neither the stipulation nor any other piece of evidence established that an officer **told** Appellant that he was under official investigation. (**See** Commonwealth's Brief at 22-23). The record confirms the Commonwealth's position. Here, the stipulation provided that the officer "was initially not given a name by [Appellant], and at some point" was given "the name Adan Jones" from Appellant. (N.T., 3/8/22, at 27). The prosecutor then clarified that at the time Appellant gave the false identification, Appellant and his companion "were both aware of what the investigation was[.]" (**Id.** at 28). Thus, we agree with Appellant and the Commonwealth that the Juvenile Court appears to have misinterpreted the stipulation at issue.

Further, as the Commonwealth points out, "awareness" of an

investigation due to the "surrounding circumstances" is insufficient to satisfy the statutory language of being "told" by an officer that the suspect is the subject of an investigation. (*Id.* at 23). *See also Kitchen, supra*. Because the only evidence relevant to Appellant's presentation of a false identification was via the stipulation which the Juvenile Court misinterpreted, we agree with the Commonwealth and Appellant that the evidence was insufficient to find that Appellant committed false identification to law enforcement, and Appellant is entitled to relief on this claim.

In his final issue, Appellant argues that a determination that a minor has committed delinquent acts does not, on its own, warrant an adjudication of delinquency. Appellant asserts that it is reversible error for a court to adjudicate a minor delinquent without hearing evidence as to his need for treatment, supervision or rehabilitation. Appellant insists the court summarily adjudicated him delinquent without giving any party the opportunity to be heard. Appellant acknowledges that his commission of felonious delinquent acts created a presumption in favor of Appellant's adjudication of delinquency. Nevertheless, Appellant contends that the court was required to allow Appellant a meaningful opportunity to rebut the presumption before adjudicating him delinquent. Appellant claims the court failed to do so.

Appellant insists that he was 14 years old and in eighth grade at the time of the adjudicatory hearing. Appellant contends that he was earning good grades in school, playing on two sports teams, working as a mentor at

his mother's church, and obeying an 8:00 p.m. curfew. Appellant maintains that these facts demonstrate that Appellant was not in need of treatment, supervision or rehabilitation. Appellant suggests the court had only "vague concerns" about "difficulties" with Appellant's supervision and alleged "reckless behavior." Appellant insists that any concern about a lack of supervision when Appellant was with his non-custodial parent was remedied when Appellant returned to his mother's supervision. Appellant suggests the court's vague assertions did not support a finding that he was in need of treatment, supervision or rehabilitation. Appellant concludes the court abused its discretion in adjudicating him delinquent, and this Court must grant relief. We agree relief is due.

"The Juvenile Act grants broad discretion to juvenile courts in determining appropriate dispositions. In addition, this Court will not disturb the juvenile court's disposition absent a manifest abuse of discretion." **In Interest of J.G., supra** at 1184. Pursuant to the Juvenile Act: "If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses." 42 Pa.C.S.A. §6341(b). Further, if the court determines that the child committed the acts alleged in the delinquency petition, the court must "hear evidence as to whether the child is in need of treatment, supervision or rehabilitation and make and file its findings thereon." **Id.** Thus, "the Juvenile Act requires a juvenile court to

find that a child has committed a delinquent act **and** that the child is in need of treatment, supervision, or rehabilitation, before the court may enter an adjudication of delinquency." **Commonwealth v. M.W.**, 614 Pa. 633, 642, 39 A.3d 958, 964 (2012) (emphasis in original). In other words, "[a] determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." **Id.** at 646, 39 A.3d at 966. "This is so even where the delinquent act constitutes a felony because, while the commission of such an act presumptively supports a finding that the juvenile is in need of treatment and supervision (and thus can be adjudicated delinquent), the juvenile court must still make that finding **after** allowing for other evidence." **Id.** at 646 n.9, 39 A.3d at 966 n.9 (emphasis added).

Instantly, the record shows that the Juvenile Court found that Appellant committed the offenses at issue and immediately adjudicated him delinquent. (**See** N.T., 3/8/22, at 43). After the adjudication, Appellant's counsel attempted to offer evidence that mitigated against adjudicating Appellant delinquent. After hearing argument from counsel, the court stated that it was "still comfortable adjudicating him" delinquent. (**Id.** at 47). Significantly, the court did not "hear evidence as to whether the [Appellant was] in need of treatment, supervision or rehabilitation" **before** making the initial adjudication. **See** 42 Pa.C.S.A. § 6341(b); **M.W., supra**. In its opinion, the Juvenile Court reasoned:

> Here, [Appellant] argues that the court erred and abused its
> discretion in adjudicating delinquent, as in [his] view,

evidence was insufficient to establish need for treatment, rehabilitation, or supervision, and the court did not comply with the Rules of Juvenile Court Procedure. [Appellant] was found to have committed two felonies, which provides sufficient evidence that the juvenile is in need of treatment, rehabilitation, or supervision. The court also learned additional information about reckless behavior and out of state charges. The court also heard evidence about difficulties in supervision, as [Appellant] apparently got into trouble while visiting his non-custodial parent, not while in his permanent residence. The court believed that adjudication and the disposition were appropriate in the interest of aiding [Appellant] in developing his competencies, [to] provide additional supervision assistance, and in considering community protection. The court did not err or abuse its discretion in adjudicating [Appellant] delinquent because the evidence proved by a preponderance that [Appellant] was in need of treatment, rehabilitation, or supervision. Additionally, the court did comply with the Juvenile Procedure Rules and stated the findings of fact and conclusions, with the disposition in open court and on the record.

(Juvenile Court Opinion at 12-13).

Notably, the Commonwealth concedes on appeal:

[T]he felonies provided only for a presumption of delinquency that had to be evaluated in light of the "other evidence." Neither the hearing nor the opinion indicate that the juvenile court juxtaposed [Appellant's] offenses with other evidence.

The [J]uvenile [C]ourt also cited "additional information about reckless behavior and out of state charges." The record is bare about this "additional information." The brief discussion of "reckless behavior" cited by the [J]uvenile [C]ourt appeared to concern the underlying delinquent acts in this case. The only evidence of out-of-state charges came from an unsubstantiated statement from the Commonwealth. The Commonwealth is constrained to acknowledge that this evidence is too undeveloped to support the adjudication of delinquency. Moreover, it still related solely to [Appellant's] criminal activity, which is

- 19 -

insufficient, alone, to merit an adjudication of delinquency. (Commonwealth's Brief at 25).

The record supports the Commonwealth's position on this issue. *See M.W., supra*. *See also Interest of K.G., supra* at 941 (reversing order adjudicating appellant delinquent because court failed to consider other evidence regarding juvenile's need for treatment, supervision or rehabilitation; "[i]nstead, the…court merely inquired about the status of other open criminal matters related to Appellant and, immediately thereafter, adjudicated Appellant delinquent"). Under these circumstances, and in light of the Commonwealth's concessions on appeal, Appellant is entitled to a new hearing at which time he can present evidence regarding his need for treatment, supervision or rehabilitation. *See M.W., supra* (remanding for new hearing to determine whether juvenile was in need of treatment, supervision or rehabilitation). Accordingly, we affirm the Juvenile Court's findings that Appellant committed the offenses of RSP, UUA, and conspiracy; we reverse the court's finding that Appellant committed the offense of false identification to law enforcement authorities; and we vacate the adjudication of delinquency and remand for a new hearing to determine whether Appellant is in need of treatment, supervision, or rehabilitation.

Dispositional order affirmed in part; reversed in part. Adjudication of delinquency vacated. Case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/19/2023</u>