J-S03025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STANLEY A. SABATEL | : | |
| | : | |
| Appellant | : | No. 1866 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 27, 2024
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0001639-2022

BEFORE: DUBOW, J., BECK, J., and LANE, J.

MEMORANDUM BY BECK, J.:                                    **FILED: MAY 4, 2026**

Stanley A. Sabatel ("Sabatel") appeals from the judgment of sentence imposed by the Luzerne County Court of Common Pleas ("trial court") following his convictions of conspiracy to commit robbery, conspiracy to commit delivery of a controlled substance, conspiracy to commit possession with intent to deliver a controlled substance, and possession with intent to deliver a controlled substance.[1] After review, we affirm in part and vacate in part and remand for resentencing.

Over the course of several months, Sabatel, and his co-conspirators Angela Ruggerio ("Ruggerio"), Junior Silvero Ventura ("Ventura"), and Austin Calarco ("Calarco") possessed and delivered quantities of methamphetamine

---

[1] 18 Pa.C.S. § 903, 3701(a)(1)(ii); 35 P.S. § 780-113(a)(30).

in the area of Hazelton, Pennsylvania. In December 2020, members of the Pennsylvania State Police Vice Narcotics Unit ("Narcotics Unit") investigated the sale of methamphetamine by Ruggerio. N.T., 9/13-19/2024, at 156-58. A confidential informant made several controlled purchases from him under the surveillance of the police. *Id.* Based on the amount Ruggerio was selling, police recognized that she had a large supplier. *Id.* at 164, 174, 176. To find the supplier, on May 24, 2021, the Narcotics Unit obtained authorization for a nonconsensual interception of Ruggerio's cellular phone. *Id.* at 180. On the first day the wire on Ruggerio's phone went live, police became aware of a significant meeting occurring at Chris Durra's Garage ("the Garage"). *Id.* at 186. The Garage was known in the community and by local law enforcement as a "nuisance garage," not a place to receive mechanical assistance. *Id.* at 165-67. While surveilling the Garage, the Narcotics Unit identified Sabatel and Ventura as Ruggerio's supplier, prompting an investigation into both men. *Id.* at 193-94. Police subsequently arrested Ruggerio, who became a cooperating witness, and stated that Sabatel and Ventura were providing her with large amounts of methamphetamine to sell. *Id.* at 255, 378. Police also arrested Ventura, who likewise became a cooperating witness for the Commonwealth, and admitted that he and Sabatel supplied Ruggerio, who was their main drug customer, with methamphetamine. *Id.* at 505-06, 512-13, 517; *see also id.* at 506 (Ventura indicated that he met Ruggerio through his friend, Justin Samler ("Justin")), 372-73 (Ruggerio testified that Justin

introduced her to Ventura and Sabatel). Ventura further said that Sabatel would deliver drugs and collect drug money. *Id.* at 515.

Additionally, Ventura stated that Justin owed him money for drugs, and Justin's brother, Brandon Samler ("Samler"), owed him money for failing to fix a motorcycle. *Id.* at 542-43, 547; *see also id.* at 547 (noting Ventura sold drugs to Samler), *id.* at 618-19 (Samler testified he may have owed money for drugs or the motorcycle). On May 30, 2021, Sabatel and Ventura confronted Samler while he was at the Garage, seeking the money owed to Ventura. *Id.* at 543. Ventura indicated he and Sabatel were on either side of Samler, and during the encounter, Sabatel pulled up his shirt to show Samler a pistol his waistband. *Id.* at 548-49, 615-16. After Samler refused to pay the money owed, Ventura took Samler's phone, and left the scene with Sabatel. *Id.* at 549-50, 552, 553.

Police arrested Sabatel, and the Commonwealth charged him with numerous crimes arising out of the sale of methamphetamine and robbery of Samler. Prior to trial, on July 3, 2023, Sabatel filed omnibus pretrial motions; of relevance to this appeal, he contended therein that his drug- and robbery-related charges should be tried separately. The trial court denied the motions.

The case proceeded to a single trial, after which the jury found Sabatel guilty of the aforementioned crimes. On November 27, 2024, the trial court sentenced Sabatel to an aggregate term of sixteen and one-half to thirty-three

years in prison.[2]  Sabatel filed a timely notice of appeal and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

On appeal, Sabatel raises the following issues for review:

1) Whether the trial court abused its discretion and committed reversible error when it denied [] Sabatel's motion to sever the robbery and conspiracy to commit robbery charges from the drug charges, where the charges did not arise from the same criminal episode or scheme, had no connection with each other and otherwise prejudice resulted from the [culmination] of the unrelated evidence?

2) Whether the evidence at trial was legally and factually insufficient to establish [] Sabatel's guilt beyond a reasonable doubt on the charge of conspiracy to commit robbery, where among other things, there was insufficient evidence to establish that [] Sabatel and his alleged co-conspirator agreed to take the victim's cellphone by force or threat?

3) Whether the trial court committed reversible error when it sentenced [] Sabatel to multiple consecutive sentences of inchoate crimes?

*See* Sabatel's Brief at 4 (cleaned up).

**Severance**

Sabatel first asserts that the trial court abused its discretion in denying his motion to sever the robbery- and drug-related offenses into separate trials. *Id.* at 10-14.  He maintains, for the purpose of receiving a fair trial, severance should have been granted because there was no connection between the purported robbery of Samler and the drug trafficking offenses.  *Id.* at 11.

_____

[2] Specifically, the trial court sentenced Sabatel to consecutive prison terms of 54 to 108 months for conspiracy to commit delivery of a controlled substance, 54 to 108 months for conspiracy to commit possession with intent to deliver, 54 to 108 months for possession with intent to deliver, and 36 to 72 months for conspiracy to commit robbery conviction.

- 4 -

Sabatel asserts that the Commonwealth's only connection between the crimes was Ruggerio, yet Samler himself stated that he never witnessed any drug transactions between Ruggerio or her supplier. *Id.* at 11-12. Further, Sabatel references the violent nature of robbery and the risk that the jury aggregated the charges, which increased the likelihood of his guilty verdict. *Id.* at 13.

Our standard of review of a denial of a motion for severance is as follows:

> [A] motion for severance is addressed to the sound discretion of the trial court, and ... its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether [the] appellant was prejudiced by the trial court's decision not to sever. [The a]ppellant bears the burden of establishing such prejudice.

**Commonwealth v. *Dozzo***, 991 A.2d 898, 901 (Pa. Super. 2010) (citation omitted).

> Under Pennsylvania Rule of Criminal Procedure 582,
>
> Offenses charged in separate indictments or informations may be tried together if:
>
> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or
>
> (b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1). Under Rule 583, "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses … being tried together."

Pa.R.Crim.P. 583. Our Supreme Court has established the following test for severance:

> Where the defendant moves to sever offenses not based on the same act or transaction ... the court must therefore determine: (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Dozzo*, 991 A.2d at 902 (quoting *Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997)).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Evidence of other crimes, however, is admissible to demonstrate:

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

*Dozzo*, 991 A.2d at 902 (citation omitted); *see also* Pa.R.E. 404(b)(2). Relevantly, "admission of distinct crimes may be proper where it is part of the history or natural development of the case, i.e., the res gestae exception." *Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa. Super. 2012).

- 6 -

Under the second prong of the test, crimes are capable of separation by the jury when they are distinct criminal offenses that are distinguishable in time, space, and characters involved. **Collins**, 703 A.2d at 423. Finally, "the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." **Commonwealth v. Hobel**, 275 A.3d 1049, 1067 (Pa. Super. 2022) (citation omitted).

Here, the trial court found that "the robbery offenses were connected to the drug offenses based on the evidence that demonstrated that the victim of the robbery owed [Sabatel] and his co-conspirator an unpaid drug debt." Trial Court Opinion, 3/18/2025, at 5. Similarly, the court concluded that the jury found Sabatel not guilty of robbery, "so the jury had no difficulty in separating the evidence with regard to the five criminal offenses they had to consider." **Id.** Finally, the trial court determined that Sabatel "failed to demonstrate any prejudice whatsoever in connection with the denial of his severance motion." **Id.**

We conclude that the trial court did not abuse its discretion in refusing to sever the two cases. The evidence against Sabatel in each of the cases would be admissible to demonstrate the history and natural development of the facts of the cases. Notably, although Sabatel asserts that there is no nexus between the drug and robbery offenses, the admission of the drug-related offense established Sabatel's and Ventura's connection to Samler, the

- 7 -

victim of the robbery. Indeed, Ruggerio testified that Justin, Samler's brother, made the introduction between Ruggerio and Sabatel that would lead to Ruggerio's involvement in drug-related transactions. N.T., 9/13-19/2024, at 373-74. Similarly, Samler admitted that he had previously bought drugs from Ventura and he knew Sabatel separately from his dealings with Ruggerio. *Id.* at 609-10, 613, 618-19. Further, the crimes occurred during the same timeframe—the drug transactions took place between January 27, 2021, and June 20, 2021, and the robbery occurred on May 30, 2021. Ruggerio, Ventura, and Samler testified that Sabatel and Ventura were together for the robbery as well as nearly all the drug transactions. *Id.* at 373, 378, 513, 610-612.

As such, the admission of the drug-related offenses at the robbery trial would be proper as they formed the natural development of the facts and history of the ongoing conspiratorial relationship between Sabatel and Ventura during the time period in question. *See Commonwealth v. Ferguson*, 107 A.3d 206, 211 (Pa. Super. 2015) (noting evidence of simple assault would be admissible in a trial for separate robbery charges to establish the existence of a conspiracy between appellant and a co-conspirator, as such evidence is part of the history of the case); *see generally Commonwealth v. Housman*, 986 A.2d 822, 835 (Pa. 2009) ("the law favors a joint trial when criminal conspiracy is charged."). This is particularly true because although the record reflects that Samler owed Ventura a drug debt, the robbery was based upon

his failure to repay a loan Ventura provided him for motorcycle parts. *See* N.T., 9/13-19/2024, at 543, 619. Thus, the basis for Sabatel's involvement in the conspiracy to rob Samler was the near constant company he kept with Ventura for purposes of committing their drug-related crimes. Accordingly, the evidence of each of the offenses would be admissible in a separate trial for the other.

Additionally, the jury could separate the drug offenses from the robbery offenses, as the robbery occurred at one location, the Garage, on a single day, May 30, 2021, unrelated to the drug distribution charges, while the drug-related offenses occurred over a six-month period between January and June 2021. *See* N.T., 9/13-19/2024, at 193-94, 255, 378, 505-06, 512-13, 515-17, 543-44, 548, 610; *see also Collins*, 703 A.2d at 423 (finding a jury was capable of separating an aggravated assault and first-degree murder charge when the crimes occurred three days apart, in different locations, and involved different victims); *Ferguson*, 107 A.3d at 211-12 (finding robbery and assault offenses were capable of separation by the jury because they occurred weeks apart, in different locations, and involved different victims). Further, the court charged the jury on each individual crime with its respective elements. N.T., 9/13-19/2024, at 909-23. Most significantly, as the trial court observed, the jury found Sabatel guilty of conspiracy to commit robbery, but not guilty of the substantive robbery charge, which shows it was capable of separating the charges.

Finally, we conclude that Sabatel was not unduly prejudiced by the trial court's denial of his severance motion. Sabatel committed a series of crimes spanning a six-month period that involved many of the same actors. The admission of relevant evidence connecting him to the crimes charged is a natural consequence of a criminal trial, and is not unduly prejudicial. *See Collins*, 703 A.2d at 423 (for purpose of consolidation of cases, prejudice "is not simply prejudice in the sense that [the] appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence") (citation and emphasis omitted); *see also Commonwealth v. Serrano*, 61 A.3d 279, 285 (Pa. Super. 2013) ("A defendant requesting a separate trial must show real potential for prejudice rather than mere speculation.") (citation omitted). Consequently, we find that the trial court did not abuse its discretion in denying Sabatel's severance motion. Sabatel's first argument fails.

## Sufficiency of the Evidence

Sabatel next asserts that there was insufficient evidence to support his conviction of conspiracy to commit robbery. Sabatel's Brief at 14-21. He contends that the evidence at trial failed to establish an agreement to commit robbery because of Samler's testimony that Ventura, rather than Sabatel, "did all the talking." *Id.* at 17. Sabatel references Samler's inconsistent testimony that the robbery could have occurred because of a drug debt owed to Ventura or money owed from motorcycle parts used by Samler's brother and his initial

inconsistent statement to police as to whether Sabatel possessed a gun during the encounter. *Id.* at 17, 18; *see also id.* at 19 (noting Ventura testified that he did not see Sabatel with a gun during the encounter). Further, he argues that Sabatel never removed the alleged gun from his waistband or brandished it or made any threats to Samler. *Id.* at 17-18. Finally, Sabatel notes Ventura's confirmation that there was no intent to conspire to commit any robbery, but instead that the two were merely "passing by" the Garage when they saw Samler. *Id.* at 18.

The scope and standard of review for a sufficiency claim is well established:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Johnson*, 180 A.3d 474, 478 (Pa. Super. 2018) (citations omitted).

A person is guilty of conspiracy if "the defendant: 1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa.

Super. 2011) (citation omitted); *see also* 18 Pa.C.S. § 903. "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Johnson*, 180 A.3d at 479 (citation omitted). Thus, a "conspiratorial agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Commonwealth v. Feliciano*, 67 A.3d 19, 26 (Pa. Super. 2013) (citation and quotation marks omitted). "The conduct of the parties and the circumstances surrounding such conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id.* (citation omitted). "Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy." *Johnson*, 180 A.3d at 479 (citation omitted).

Relevant to the robbery charge, the Pennsylvania Crimes Code states, in pertinent part, that: "a person is guilty of robbery if, in the course of committing a theft, he … threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). Further, this Court has stated that "the Commonwealth need not prove a verbal utterance or threat to sustain a conviction [of robbery]." *Commonwealth v.*

*Ouch*, 199 A.3d 918, 924 (Pa. Super. 2018). "The proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of immediate serious bodily injury." *Id.* (citation and quotation marks omitted). As such, "the threat posed by the appearance of a firearm is calculated to inflict fear of deadly injury, not merely fear of 'serious bodily injury.'" *Id.* (citation omitted).

At trial, Ventura testified that Sabatel assisted him in selling drugs from the period of January 2021 and June 2021. N.T., 9/13/2024, at 511. Ventura recalled that the two were together almost every day and that Sabatel was with him when he sold drugs because Sabatel was Ventura's driver during the transactions. *Id.* at 512-13. He further added that on May 30, 2021, the day they robbed Samler, although Sabatel was with him, he simply stood next to Ventura and, "said nothing." *Id.* at 543-44, 548. He claimed that there was no plan to take Samler's cell phone, or even confront Samler, but instead that the two were merely driving by when Ventura saw Samler's car parked outside the Garage. *Id.* at 575. Ventura claimed that Samler owed him money related to motorcycle parts, while Samler's brother, Justin, owed him a sum from drugs. *Id.* at 543, 576. The Commonwealth introduced a video, which depicted Ventura and Sabatel exiting a Honda Accord and entering the Garage where the robbery took place to confront Samler. *Id.* at 546. Ventura states that upon entering the Garage, he did not see Sabatel with a weapon nor was

a weapon used at any point to threaten Samler. *Id.* at 549-550, 554. Ventura testified that he, not Sabatel, took Samler's phone. *Id.* at 549.

Samler testified that on May 30, 2021, he was sitting on a chair in the Garage sleeping when Sabatel and Ventura confronted him. *Id.* at 610-612. He indicated Sabatel and Ventura "surrounded [him]," and demanded that he pay them money. *Id.* at 611; *see also id.* at 613, 618-19 (noting Ventura could have sought money for previous sums owed from drug transactions or motorcycle parts). After responding he did not have any money, Sabatel and Ventura spoke to each other in Spanish and then asked Samler to open his phone to show a cash app to confirm he had no money. *Id.* at 613-14. Samler testified that when he reached for his phone, Sabatel pulled his shirt up, revealing a gun in the waistband of his pants. *Id.* at 615-16; *see also id.* at 635-36, 641 (wherein Samler stated that although he initially told police that Sabatel did not have a gun, Sabatel had a gun and showed it to him in his waistband). According to Samler, "I was sitting in a chair and he [Sabatel] was right next to me with his waist in my face." *Id.* at 616. Samler testified that it was Ventura who took his phone and Sabatel was there but said nothing during the exchange. *Id.* at 628.

The evidence, viewed in a light most favorable to the Commonwealth, establishes beyond a reasonable doubt that Sabatel and Ventura entered into an agreement to take Samler's property by threat of force to collect on a debt; that the two men shared the intent to commit the robbery; and committed

overt acts in furtherance of the conspiracy. There was a well-known and long-standing association between Ventura and Sabatel from January 2021 to June 2021. Sabatel's actions with Ventura of approaching Samler, speaking with Ventura after Samler said he had no money, flashing a gun during the encounter,[3] and leaving the scene together was sufficient to establish he and Ventura acted with a "unity of criminal purpose." ***Commonwealth v. Thomas***, 65 A.3d 939, 945 (Pa. Super. 2013) (citation omitted). As such, Sabatel's challenge to the sufficiency of the evidence fails.[4] ***See Commonwealth v. Rosario***, 248 A.3d 599, 612 (Pa. Super. 2021) (concluding that evidence was sufficient to support conspiracy conviction where appellant and co-conspirator "were associated with one another; furthermore, they each had knowledge of the crime, were present at the scene of the crime, and participated in the object of the conspiracy"); ***Thomas***, 65 A.3d at 946 (finding that defendant's relationship with his co-conspirators in

_____

[3] Although Ventura testified that Sabatel did not brandish a gun, Samler testified that he did. Our review of the evidence in the light most favorable to the Commonwealth requires that we resolve this inconsistent testimony in favor of the Commonwealth. ***See Commonwealth v. Pledger***, 332 A.3d 29, 34-35 (Pa. Super. 2024) (noting "when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence[,]" and "[r]esolving contradictory testimony and questions of credibility are matters for the finder of fact") (citations omitted).

[4] "[T]he mere fact that appellant was acquitted of the underlying crime is irrelevant to his guilt on the conspiracy charge." ***Thomas***, 65 A.3d at 944 (citation omitted).

conjunction with the sequence of events including approaching the victim as a group, beating the victim, and leaving the scene together "established evidence sufficient to allow the jury to find beyond a reasonable doubt that [a]ppellant and the other co-defendants engaged in a criminal conspiracy").

## Sentencing for Inchoate Offense Convictions

In Sabatel's final challenge, he argues that the trial court committed reversible error when it separately and consecutively sentenced him on each of his conspiracy convictions. Sabatel's Brief at 21-25. Specifically, Sabatel claims that he could not be sentenced separately for his conspiracy to deliver a controlled substance (count one), conspiracy to commit possession with intent to deliver (count two), and conspiracy to commit robbery (count five). *Id.* at 22. As it relates to the drug conspiracy charges, Sabatel asserts that the evidence produced at trial revealed that there was only one purported agreement: to distribute methamphetamine. *Id.* at 23. Sabatel further adds that he should not have been sentenced separately for the robbery-related charges because the robbery conspiracy was not the result of a separate conspiracy from the one to distribute methamphetamine. *Id.* at 24.

Sabatel's claim implicates the legality of his sentence. *See Commonwealth v. Jacobs*, 39 A.3d 977, 982 (Pa. 2012) (claim that "multiple sentences for inchoate crimes designed to culminate in the commission of the same crime" implicates the legality of sentence). A challenge to the legality of sentence presents a question of law for which we

employ a plenary scope of review and our standard of review is de novo. *Commonwealth v. Gordon*, 942 A.2d 174, 175 (Pa. 2007).

The Pennsylvania Crimes Code provides: "A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime." 18 Pa.C.S. § 906. Under section 906, convicted means "the entry of a judgment of sentence, rather than a finding of guilt by the jury." *Jacobs*, 39 A.3d at 983; *see also Commonwealth v. King*, 234 A.3d 549, 569 n.17 (Pa. 2020). Under section 906, "inchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident." *Jacobs*, 39 A.3d at 983 (citation omitted).

"If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S. § 903(c). Thus, "to be convicted of three counts of conspiracy, there must be separate agreements, or separate conspiratorial relationships, to support each conviction." *Commonwealth v. Rivera*, 238 A.3d 482, 503 (Pa. Super. 2020) (citation omitted).

This Court has articulated factors for determining whether a single conspiracy or multiple conspiracies exist:

> the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the

similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

*Id.* (citation omitted).

Further, "in the absence of clear evidence of the jury's intent to the contrary, a general conspiracy verdict must be resolved in favor of the defendant, and may be construed only as a conviction of conspiracy to commit the least serious underlying offense for which the jury could properly have found the defendant to have conspired to commit." *Jacobs*, 39 A.3d at 984. In other words, a defendant must be given the benefit of a jury's ambiguous verdict. *Commonwealth v. Riley*, 811 A.2d 610, 620 (Pa. Super. 2002).

In the criminal information, the Commonwealth charged Sabatel with conspiracy to commit both delivery of a controlled substance (count one) and possession with intent to deliver (count two), respectively:

> On or about May 25, 2021 to June 20, 2021, in or around the county of Luzerne and elsewhere, [] [Sabatel] with the intent of promoting or facilitating the commission of a crime, agreed with another person or persons, namely [] Ruggerio, [] Calarco, [] Ventura, and/or others that they or one or more of them would engage in conduct which would constitute such crime, namely delivery of methamphetamine, a [s]chedule II controlled substance, in violation of 35 P.S. section 780-113(a)(3), or an attempt or solicitation to commit such a crime, and/or agreed to aid another person or persons in the planning or commission of a crime, or of an attempt or solicitation to commit such a crime.
>
>         *      *      *
>
> On or about May 25, 2021 to June 20, 2021, in or around the county of Luzerne and elsewhere, [] [Sabatel] with the intent of promoting or facilitating the commission of a crime, agreed with

- 18 -

another person or persons, namely [] Ruggerio, [] Calarco, [] Ventura, and/or others that they or one or more of them would engage in conduct which would constitute such crime, namely [p]ossession with [i]ntent to [d]eliver methamphetamine, a [s]chedule II controlled substance, in violation of 35 P.S. section 780-113(a)(3), or an attempt or solicitation to commit such a crime, and/or agreed to aid another person or persons in the planning or commission of a crime, or of an attempt or solicitation to commit such a crime.

Criminal Information, 8/1/2022, at 1.

At trial, several officers involved in the investigation discussed the wire-tap on Ruggerio's phone to monitor her communications. *Id.* at 193-94. Throughout trial testimony, police claimed that text messages sent from various phone numbers, belonging to Ventura and Sabatel, to Ruggerio, led them to charge Sabatel. *Id.* Ventura and Ruggerio testified that for nearly all transactions, Sabatel drove Ventura to various locations when drugs were in the car and were together when drug-related transactions were afoot. *Id.* at 373, 513. Ruggerio testified that throughout the course of their relationship, she would meet up with the two men "like, every other day" to buy a pound or more of methamphetamine and that they were her regular suppliers. *Id.* at 378. Ventura shared that Ruggerio was their "main drug customer" and they would sell to her "sometimes even twice a week." *Id.* at 506, 508. Ventura stated that he would allow Sabatel to use his work phone to communicate with Ruggerio to coordinate the drug transactions. *Id.* at 515-16.

Further, during the Commonwealth's opening statements, they referred to a general "agreement that was entered into between [] Sabatel and [] Ventura to provide drugs to [] Ruggerio in Luzerne County." N.T., 9/13-19/2024, at 131. During the Commonwealth's closing argument, they added, "[t]here was evidence presented that can lead you to conclude that there was an understanding between [] [Sabatel], between [] [Ventura], [and] between [] [Ruggerio] that they were going to traffic and distribute methamphetamine throughout that area and that distribution of methamphetamine was the goal." *Id.* at 893.

When the court instructed the jury with respect to counts one and two, it provided the same allegations for both counts:

Count 1, criminal conspiracy to commit delivery of a controlled substance…. The allegations are that [] [Sabatel] conspired with [] Ruggerio and/or [] Ventura. The information alleges that the crime of delivery of a controlled substance was the object of the conspiracy. The term delivery includes the actual transfer from one person to another of a controlled substance. Methamphetamine is a controlled substance in Pennsylvania. The Commonwealth alleges that the following actions were overt acts. [Sabatel] and/or [Ventura] provided methamphetamine to [Ruggerio]….

To find [] [Sabatel] guilty of criminal conspiracy to commit delivery of a controlled substance you must be satisfied that the following three elements have been proven beyond a reasonable doubt.

First, that [] [Sabatel] agreed with [] Ruggerio and/or [] Ventura that one of them would engage in conduct for the planning and commission of the crime of delivery of a controlled substance. Second, that [] [Sabatel] and [] Ruggerio and/or [] Ventura intended to promote or facilitate the committing or the delivering of a controlled substance; in other words, they share

- 20 -

the intention to bring about that crime or to make it easier to commit that crime. Third, that [] [Sabatel] or [] Ruggerio or [] Ventura did the acts that are alleged to have been overt acts and did them in furtherance of their conspiracy.

*     *     *

Count 2, criminal conspiracy to commit possession with intent to deliver…. The allegations are that [] [Sabatel] conspired with [] Ruggerio and/or [] Ventura. The information alleges that the crime of possession with intent to deliver of a controlled substance was the object of the conspiracy.

The Commonwealth alleges that the following actions were overt acts. The Defendant possessed methamphetamine, which he intended to provide to [Ruggerio] and/or [Ventura]. Before any defendant can be convicted, the 12 jurors must agree on the same person or persons who [Sabatel] allegedly conspired with the same object crime and the same overt act or acts.

To find [] Sabatel guilty of criminal conspiracy to commit possession with intent to deliver, you must be satisfied that the following three elements have been proven beyond a reasonable doubt. First, that [] [Sabatel] agreed with [] Ruggerio and/or [] Ventura that one of them would engage in conduct for the planning and commission of the crime of delivery of a controlled substance. Second, that [] [Sabatel] and [] Ruggerio and/or [] Ventura intended to promote or facilitate the committing of possession with intent to deliver a controlled substance. In other words, they shared the intention to bring about that crime or to make it easier to commit that crime. Third, that [] [Sabatel] or [] Ruggerio or [] Ventura did the acts that are alleged to have been overt acts and did them in furtherance of their conspiracy.

*Id.* at 912-14; 915-17. The jury found Sabatel guilty on both counts, but the

verdict slip did not include any interrogatory for the jury to indicate whether

the drug-related convictions constituted individual conspiracies or were part

of one large scheme. *Id.* at 925-27.

Finally, at sentencing, the Commonwealth indicated the following:

- 21 -

With regard to Count 1 and 2, conspiracy to deliver methamphetamine and conspiracy with possession with intent to deliver methamphetamine, the date range in the information found was January 27 of 2021 to June 20 of 2021, which is what was presented at trial. That indicates over that time period, [] [Sabatel] and codefendant were delivering over a pound of [m]ethamphetamine on a regular basis, at least on a weekly basis.

N.T., 11/27/2024, at 2.

The trial court rejected Sabatel's sentencing claim regarding the drug-related conspiracy counts, finding the following:

[T]he drug conspiracies were directed to the commission of different crimes. One was possession with intent and the other was delivery. It was also reasonable for the jury to infer that the possession with intent and delivery offenses resulted from different incidents since there was evidence presented at trial which established that [Sabatel] had committed these crimes several times a week over a period of five months.

Trial Court Opinion, 3/18/2025, at 11.

Upon our review of the record, including the evidence presented by the Commonwealth, the criminal information, and the jury instructions, we respectfully disagree with the trial court. Nothing in the criminal information tends to establish that there were separate conspiracies to distribute methamphetamine as opposed to the possession with intent to deliver methamphetamine. To the contrary, the language of the information, as well as the evidence introduced at trial and the Commonwealth's arguments, establish that the same acts were committed by the same three actors to accomplish the sale of drugs, all of which occurred during the same six-month period, utilizing same method. *See* Criminal Information, 8/1/2022, at 1; *see*

*also* N.T., 9/13-19/2024, at 193-94, 255, 378, 505-06, 512-13, 515-17; Commonwealth's Brief at 29 (noting that the "testamentary and documentary evidence showed the jury that Sabatel conspired with [Ventura] over a six-month period of time to operate a drug distribution business that involved the transportation and delivery of large amounts of methamphetamine to Ruggerio at least twice a week for half a year"). This constituted a single, continuous conspiratorial relationship. **See** 18 Pa.C.S. § 903(c); **Commonwealth v. Perez**, 553 A.2d 79, 80-81 (Pa. Super. 1988) (finding the criminal complaint containing identical language charging conspiracy to distribute cocaine and marijuana, respectively, was insufficient to allege separate conspiracies).

Moreover, it is impossible to draw any specific inferences or conclusions from the jury's general verdict on these conspiracy charges. **See Riley**, 811 A.2d at 619 ("When a general verdict is rendered, knowledge of the basis of the decision rests only with the jury itself. Therefore, it is impossible, not to mention improper, to draw specific conclusions from a general verdict."). Thus, we are constrained to find that the drug-related charges were part of one overarching conspiratorial scheme: to distribute of methamphetamine. **See Perez**, 553 A.2d at 80-81 (concluding that the merger of sentences was proper when appellant was found guilty of conspiracy to distribute marijuana and a separate count to distribute cocaine because it was part of a larger, overarching drug scheme); **see also Riley**, 811 A.2d at 620. As such, the

trial court's consecutive sentences for counts one and two are not permitted under the law and the crimes should have merged for sentencing.[5]

Turning to the conspiracy to commit robbery charge, we find that this was not part of the larger drug conspiracy and was instead a separate conspiratorial agreement. As indicated in the criminal information, the conspiracy to commit robbery had a separate, standalone date, and was not part of the ongoing drug-related conspiracy. *See* Criminal Information, 8/1/2022, at 1. Further, the conspiracy to commit robbery involved only two individuals—Sabatel and Ventura—and not the group of individuals named in the drug-related charges. *Id.*

Further, as discussed above, the record reflects that when Sabatel and Ventura arrived at the Garage on the day of the robbery, no drug transactions were afoot. N.T., 9/13-19/2024, at 545-47.[6] In fact, Ventura's testimony suggests that the robbery occurred because Samler owed him money that Ventura had given Samler to fix a motorcycle. *Id.* at 543, 576. Further, the conspiracy to commit robbery was done with the goal to permanently deprive Samler of his cellular device, not to distribute methamphetamine. As such,

_____

[5] We note that Sabatel did not raise a sufficiency challenge regarding the two drug-related conspiracy convictions.

[6] Ventura stated that he and Sabatel were merely driving by the Garage when they saw Samler's car located outside and there were no drugs in the car on the day in question. N.T., 9/13-19/2024, at 546.

the trial court properly sentenced Sabatel on the conspiracy to commit robbery conviction, and the trial court did not err in this regard.

Accordingly, we vacate the sentence imposed on counts one and two for the drug-related conspiracy and remand for the trial court to impose a sentence as to one of the crimes, but not both. ***See Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006) ("If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan").  We affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed in part and reversed in part.  Case remanded for resentencing.  Jurisdiction relinquished.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/4/2026